[Crim. No. 21610. Dec. 15, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
MARGIE JENKINS, Defendant and Respondent.

Counsel

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller, Jana Tuton, James T. McNally and James Ching, Deputy Attorneys General, for Plaintiff and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Richard E. Shapiro, Michael G. Arkelian, Julia Cline Newcomb and Stephen Berlin, Deputy State Public Defenders, for Defendant and Respondent.

John McDermott, Daniel S. Brunner and Marilyn Katz as Amici Curiae on behalf of Defendant and Respondent.

Opinion

**BIRD, C. J.**—This appeal presents the question whether an individual who fraudulently obtains aid to families with dependent children (AFDC) in violation of Welfare and Institutions Code section 11483 may also be prosecuted for perjury (Pen. Code, § 118).

I.

On April 10, 1975, respondent Margie Jenkins went to the Sacramento County Welfare Department to request AFDC benefits for her daughter. (See Welf. & Inst. Code, § 11200 et seq.) She was given a lengthy document, a WR-2 form, which she was instructed to fill out in order to establish her child's eligibility for the AFDC program.

On April 15, respondent returned to the welfare department with the completed WR-2 form, and an eligibility worker reviewed the form with her. Respondent then signed the form in the space provided, underneath the sentence "I declare under penalty of perjury that the foregoing statements on this form are true and correct." Respondent reported on the WR-2 form that her gross income for April was $278. Evidence adduced at her preliminary hearing below indicated that respondent and her daughter together earned $471 gross ($412 net) for that month.

The eligibility worker explained to respondent her "reporting responsibilities," which included the requirement that respondent fill out, sign, and mail back to the welfare office each month a "Monthly Income Report," a WR-7 form. Evidence at the preliminary hearing indicated that respondent filled out WR-7 forms and obtained AFDC benefits for her daughter for some of the 13 months following her meeting with the eligibility worker. During that period, respondent and her daughter had a total gross income from various jobs of about $1,770. In her WR-7 forms for May 1975 and March 1976, respondent either underreported or failed to report her earnings.[1] The errors in the WR-2 and WR-7 forms resulted in an overpayment of more than $200 in benefits.

Based on this evidence, the district attorney filed a two-count information in superior court. In count I, respondent was accused of a felony violation of Welfare and Institutions Code section 11483 (AFDC fraud) during the period from April 1, 1975, to May 31, 1976.[2] Count II alleged that respondent committed perjury in violation of Penal Code section 118 when she signed the WR-2 form on April 15, 1975.[3] Re-

[1]There may have been other months in the period from April 1975 through May 1976 in which respondent obtained AFDC benefits and omitted to disclose income. However, the evidence presented at the preliminary examination below showed failures to report income only in the three months discussed in the text.

[2]Welfare and Institutions Code section 11483 currently provides: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows:

"(1) If the amount obtained or retained is two hundred dollars ($200) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine.

"(2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year.

"*When the allegation is limited to failure to report not more than two thousand dollars ($2,000) of income or resources, or the failure to report the presence of an additional person or persons in the household,* all actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850. *Such action for restitution may be satisfied by sending a registered letter requesting restitution to the last address at which the person was receiving public assistance.*"

The underscored portions of section 11483 were added by Statutes 1979, chapter 1171, section 1, No. 8 West's California Legislative Service, page 4789, No. 6 Deering's Advance Legislative Service, page 1034. Otherwise, the statute reads substantially the same today as it did when respondent's daughter was receiving AFDC benefits. (Cf. Stats. 1977, ch. 165, § 95, p. 679.)

[3]Penal Code section 118 provides: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or persca, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of

spondent moved to dismiss count II on the ground that the Welfare and Institutions Code statute proscribing AFDC fraud was a specific statute which precluded the state from prosecuting her under the more general perjury statute in the Penal Code. The superior court granted the motion, and the prosecution has appealed.

## II.

In the 13 chapters constituting part 3 of division 9 of the Welfare and Institutions Code, the Legislature has provided for public assistance programs for certain needy persons in this state. (§§ 11000-15520.) Chapter 1 of part 3 contains "General Provisions" pertaining to those programs (§§ 11000-11175); chapter 2 sets forth the AFDC program (§§ 11200-11489).[4]

Among the general provisions in chapter 1 are statutes relating to applications for public aid or assistance. (§§ 11050-11063.) Section 11054 requires each applicant to file an "affirmation" of eligibility before aid or assistance may initially be approved. Such "statements" shall be on prescribed forms and *"in the case of applicants for aid to families with dependent children,* shall contain a written declaration that the affirmation is made under penalty of perjury." (*Ibid.,* italics added.) If a person signs "a statement containing such declaration" and willfully and knowingly with intent to deceive states as true any material matter which he knows to be false, he is "subject to the penalties prescribed for perjury in the Penal Code." (*Ibid.*) Once an applicant has begun to receive aid, he or she may be required to fill out "new statements" at any time for purposes of continuing assistance. (*Ibid.*)[5]

perjury in any of the cases in which such testimony, declarations, depositions, or certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury."

Hereinafter, references to section 118 mean section 118 of the Penal Code (i.e., perjury). All other statutory references are to the Welfare and Institutions Code unless explicitly stated otherwise.

[4]Among the other programs contained in part 3 are the State Supplementary Program for Aged, Blind and Disabled (ch. 3, § 12000 et seq.), Emergency Payments and Special Circumstances for Aged, Blind and Disabled (ch. 4, § 12500 et seq.), Aid to the Potentially Self-Supporting Blind (ch. 5, § 13000 et seq.), Medi-Cal (ch. 7, § 14000 et seq.), and the Supplemental Food Program (ch. 10, § 15500 et seq.).

Some familiar aid programs do not fall within part 3, such as those pertaining to county aid to indigents (§ 17000 et seq.), food stamps (§ 18900 et seq.), and unemployment insurance (Unempl. Ins. Code, § 1 et seq.).

[5]In its entirety, section 11054 provides: "Each applicant shall be required before approval of assistance or services to file an affirmation setting forth his belief that he meets the specific conditions of eligibility. Such statements shall be on forms prescribed by the department and, in the case of applicants for aid to families with dependent chil-

Chapter 2 of part 3 specifically sets forth the AFDC program. The chapter prescribes (inter alia) the eligibility requirements for AFDC benefits (§§ 11250-11268) and requires the county to "redetermine eligibility annually" (§ 11265, subd. (a).). The county *must* at the time of such redetermination, and *may* monthly or at such other intervals as may be deemed necessary, require the family to complete a "certificate of eligibility containing a written declaration of such information as may be required to establish the continuing eligibility and amount of grant...." (*Ibid.*) Each adult member of the family must provide, "under penalty of perjury," the information necessary to complete the certificate of eligibility. (§ 11265, subd. (b).)[6]

Two provisions in the "Enforcement" portion of chapter 2 make AFDC fraud illegal: sections 11482 and 11483.[7] Both sections prohibit

dren, shall contain a written declaration that the affirmation is made under penalty of perjury. Any person signing a statement containing such declaration, who willfully and knowingly with intent to deceive states as true any material matter which he knows to be false, is subject to the penalty prescribed for perjury in the Penal Code.

"Whenever the applicant himself is incapable of completing the required affirmation, and no guardian or conservator of his estate has been appointed, the affirmation may be completed on his behalf by a relative or close personal friend or a representative of a public agency who has all necessary knowledge regarding the applicant's circumstances and is willing to affirm thereto. A copy of the affirmation shall be furnished to the applicant or other person completing it at the time it is filed. Such other person completing an affirmation who willfully and knowingly with intent to deceive states as true any material matter which he knows to be false is subject to the penalty prescribed for perjury in the Penal Code.

"A county department may also require like statements to be completed prior to approving restoration of aid as provided by Section 11051, and may require new statements at any time for purposes of continuing assistance." The section has remained unchanged since 1965.

[6]Section 11265 provides in pertinent part: "(a) The county shall redetermine eligibility annually. The county shall at the time of such redetermination, and may monthly or at such other intervals as may be deemed necessary, require the family to complete a certificate of eligibility containing a written declaration of such information as may be required to establish the continuing eligibility and amount of grant pursuant to Section 11004 of this code.

"(b) The certificate shall include blanks wherein shall be stated the names of all children receiving aid, their present place of residence, the names and status of any other adults living in the home, the name, and if known, the social security number and present whereabouts of a parent who is not living in the home, and any outside income that may have been received through employment, gifts, or the sale of real or personal property.

"Each adult member of the family shall provide, under penalty of perjury, the information necessary to complete such certificate."

Although organized somewhat differently, the above-quoted portion of section 11265 was in effect during the time respondent's daughter received AFDC benefits. (See Stats. 1971, ch. 578, § 25, p. 1154.)

[7]Since its enactment in 1965, section 11482 has provided: "Any person other than a needy child, who willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid,

the obtaining of aid by means of "false statement or representation." (See *People* v. *Gilbert* (1969) 1 Cal.3d 475, 480-481 [82 Cal.Rptr. 724, 462 P.2d 580].) Section 11482 also prohibits unsuccessful *attempts* to obtain aid. A violation of section 11482 is punishable as a misdemeanor, whereas a prosecution under section 11483 may proceed either as a misdemeanor or as an alternative felony-misdemeanor, depending upon whether or not the amount of aid illegally obtained exceeded $200. Both now and at the time of respondent's alleged crime, the punishment prescribed for a felony violation of section 11483 has been less than that prescribed for perjury under the Penal Code.[8]

Unlike section 11054 in chapter 1, none of the AFDC statutes in chapter 2 contains language which expressly authorizes an individual's being "subject[ed] to the penalty prescribed for perjury in the Penal Code."

█ In dismissing the perjury charge below, the superior court impliedly ruled—and respondent reasserts on appeal—that since section 11483 is a "special" statute dealing with AFDC fraud, the more "general" perjury provisions of section 118 do not apply. Reference is made to "'the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'" (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], citations omitted; *People* v. *Gilbert, supra*, 1 Cal.3d at p. 479.)

The Attorney General responds by relying on *People* v. *Isaac* (1976) 56 Cal.App.3d 679 [128 Cal.Rptr. 872], in which the Court of Appeal held that a prosecution for perjury under section 118 was not precluded by the misdemeanor provisions of section *11482*. The Court of Appeal noted that "[a] special statute does not supplant a general statute unless

or who, knowing he is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he is not entitled, or a larger amount than that to which he is legally entitled, is guilty of a misdemeanor."

For the text of section 11483, see footnote 2, *ante*, at page 498.

[8]Unlike felonious AFDC fraud, perjury is not an alternative felony-misdemeanor. Moreover, under the Uniform Determinate Sentencing Act, perjury is punishable by imprisonment in the state prison for two, three, or four years. (Pen. Code, § 126.) If an individual is sentenced to prison for a felony violation of section 11483, the base term of imprisonment is sixteen months or two or three years. (See Pen. Code, § 18.)

At the time of respondent's alleged crime, perjury was punishable under the Indeterminate Sentence Law by imprisonment for 1 to 14 years in state prison, and felonious AFDC fraud by imprisonment for 1 to 10 years.

all of the requirements of the general statute are covered in the special statute." (56 Cal.App.3d at p. 683.) The court then compared the elements of section 118 with those contained in section 11482. Since section 118 applies only to false statements *under oath or affirmation* whereas section 11482 (like § 11483) covers *any* false statements, the court concluded that "the rule articulated in *Williamson* is inapplicable. (*Ibid.*)

However, this analysis is defective for it is incomplete. It is true, as the *Isaac* court divined from *Gilbert*, that the *Williamson* rule is applicable when each element of the "general" statute corresponds to an element on the face of the "specific" statute. However, the converse does not necessarily follow. It is not correct to assume that the rule is inapplicable whenever the general statute contains an element not found within the four corners of the "special" law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.

Two cases underscore this point. In *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830], the evidence adduced at the preliminary hearing indicated that the defendant had made two purchases of goods using a stolen credit card. The prosecution charged the crime of forgery, a felony. (Pen. Code, § 470.) The accused moved under Penal Code section 995 to dismiss the forgery count on the ground that the Penal Code provisions relating to credit card use precluded a conviction for the more general crime of forgery. (See Pen. Code, § 484a, subd. (b)(6).) The superior court granted the section 995 motion, and the Court of Appeal affirmed.

The Court of Appeal stated that "the People do not have the power to prosecute under the general felony statute in a case such as this where the facts of the alleged offense parallel the acts proscribed by a specific statute." (213 Cal.App.2d at p. 449.) The court noted that the crime of forgery contained as an element a requirement that the accused "sign" the credit instrument, whereas the offense of credit card use applied on its face to any "use" of the credit card. (*Id.*, at p. 451.) Nevertheless, the court held the credit card use law was a special statute precluding prosecution for forgery, because "the Legislature in

enacting section 484a...*contemplated false or unauthorized signatures on credit invoices* by parties engaged in the misdemeanor use of credit cards under subsection (6) of subdivision (b) of the statute since such signatures are required of credit card users *in the customary use of such cards.*" (*Ibid.*)

A similar holding was recently rendered by this court in *People* v. *Ruster* (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]. In *Ruster* an individual had used a false name and a false social security number to obtain unemployment insurance benefits. Convicted of grand theft and 14 counts of forgery, the defendant argued that these convictions were barred by section 2101 of the Unemployment Insurance Code, which makes it "a misdemeanor to willfully make a false statement or representation...to obtain...any benefit or payment...." The court agreed.

The reasoning employed by the court in precluding the forgery convictions is particularly relevant here. The court observed that forgery contained one element—"signing the name of another, or of a fictitious person" to a document—which was not a requirement on the face of the unemployment insurance fraud statute. (16 Cal.3d at p. 698.) Nevertheless, the court held that section 2101 was a special statute which barred a conviction under the general forgery statutes. The court discussed *Swann, supra*, with approval, and concluded, "[h]ere, too, the Legislature unquestionably contemplated that the special statute might be violated by means of forgery. Indeed, applying for aid under a false identity, which entails signing eligibility questionnaires and pay certification cards with a false name, is apparently one of the most common forms of unemployment insurance fraud." (16 Cal.3d at p. 699.)

In the present appeal, it is true that the assertedly "general" crime of perjury requires as an element of the offense that a false statement be made *under oath or affirmation* whereas the crime of AFDC fraud applies on its face to *any* false statement made to obtain benefits. However, this fact does not per se render the principles of *Williamson* inapplicable. Consideration must be given to the entire context surrounding the "special" statute to determine the true overlap of the statutes and to ascertain the intent of the Legislature. To the extent that *Isaac, supra*, holds to the contrary, it is hereby disapproved.[9]

---

[9]In an early portion of the *Ruster* opinion, it was stated that "a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute." (16 Cal.3d at p. 694, italics in original.) This language is easily susceptible of misconstruction and is in fact inconsistent with the actual analysis

Respondent argues that although section 11483 contains on its face no requirement that a person's false statement to obtain AFDC benefits be made under oath or penalty of perjury, reference to other portions of the Welfare and Institutions Code reveals that *in fact* a person cannot obtain AFDC benefits without making such a statement. Thus, an initial application for AFDC benefits must contain an affirmation of eligibility, including "a written declaration that the affirmation is made under penalty of perjury." (§ 11054.) Moreover, both the annual redeterminations of eligibility and the monthly income reports require the family to complete a certificate of eligibility "under penalty of perjury." (§ 11265.)[10]

The Attorney General suggests two factual situations in which an individual assertedly could be guilty of AFDC fraud without violating the perjury provision of section 118. The first assertedly would occur "when the applicant is detected as making a false application prior to the initial declaration of eligibility." However, this example erroneously assumes that an applicant can "mak[e] a false application" and obtain aid[11] without completing the application under penalty of perjury. That assumption is squarely refuted by the plain terms of section 11054, requiring all AFDC applications to be completed under penalty of perjury "before approval of assistance...."

The Attorney General's second example relates to an AFDC applicant who has lawfully obtained AFDC benefits but who subsequently has a "material change of circumstance which lowers the amount of benefits he should receive. If the applicant does not notify the appropriate authorities pursuant to his WR-2 certification, he will continue to receive benefits until the next WR-7 form arrives. If the applicant then terminates his receipt of benefits, and never completes the WR-7 form, no perjury is committed."

undertaken in *Ruster* itself. To avoid further undue confusion, the quoted language on page 694 of *Ruster*—but *only* this language—is also disapproved.

[10]The Department of Social Services used the WR-2 forms (now CA-2 forms) when an applicant initially applied for AFDC benefits or when the annual redetermination of eligibility was made. (See Dept. of Social Services, Manual of Pol. & Proc., Eligibility & Asst. Standards, std. 40-181.11 [hereafter EAS].) The WR-7 form (now CA-7 form) has been employed for the income reports which are filled out "monthly or at such other intervals as may be deemed necessary...." (§ 11265, subd. (a).) At the time respondent's daughter received AFDC benefits, WR-7 forms were required on a monthly basis. (See now EAS, std. 40-181.22.)

[11]If an applicant makes out a false application but obtains no AFDC benefits, the crime defined by section 11483 has not been committed. (See fn. 2, *ante*, at p. 498.)

However, the facts set forth in this example would not result in criminal liability either for perjury under section 118 or for fraud under section 11483. Initially, it is not at all obvious that a failure to report income under the postulated circumstances would amount to a "false statement or representation or...impersonation or other fraudulent device...." But even assuming this element of section 11483 to be present, the manner in which the AFDC program is administered would preclude the applicant from actually obtaining benefits to which he or she is not entitled.[12] Therefore, there would be no violation of section 11483.

It would appear that there are no situations in which an individual can violate section 11483 without also committing perjury. The specific-versus-general rule of *Williamson, Swann, Gilbert*, and *Ruster* would therefore seem to be applicable.

█ However, due to the unique circumstances of the present case, this conclusion does not end the inquiry. █ The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent.[13] The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legis-

---

[12]After a family has received AFDC benefits for two months, the amount of aid to which it is entitled is determined by the so-called Prior Month Budgeting System (PMB). (See EAS, std. 44-315.6.) Under PMB, the amount of benefits received in one month (e.g., October) depends primarily upon the family's income two months earlier (i.e., in August).

Under long-standing regulations of the Department of Social Services, a recipient must file an eligibility and income report (i.e., a WR-7 form) in every month for which benefits are sought. (See EAS, stds. 40-181.11, 40-181.22.) No aid will be provided unless that form has been completed and returned to the county AFDC office. (See EAS, std. 44-315.72.) If no WR-7 form is received, the recipient's AFDC grant is terminated. (EAS, std. 44-315.72.) According to amicus, this is in fact the most common method for recipients to terminate AFDC aid.

Finally, section 11455 provides that "[i]f on the first day of the month a child is eligible for aid, aid for the entire month shall be paid."

Application of these rules to the hypothetical situation suggested by the Attorney General indicates that no overpayment would result if a family on AFDC had an increase in income and simply decided to refrain from filling out or returning any more WR-7 forms. Any aid that family was currently receiving would be based upon the family's situation two months earlier—when it was eligible for the current amount—and all future aid would be terminated by virtue of the failure to complete the next monthly WR-7 form.

[13]At oral argument respondent repeatedly declined to argue that the rule has constitutional implications. Therefore, this court need not consider that issue.

lative intent and "requires us to give effect to the special provision alone in the face of the dual applicability of the general provision...and the special provision...." (*People* v. *Gilbert, supra*, 1 Cal.3d at p. 481.)

■ In the present case, however, there exists what can only be characterized as overwhelming indications of a contrary legislative intent. In this limited situation, the usually decisive rule that a specific statute precludes prosecution under a general statute cannot apply.

The language of two relevant provisions of the Welfare and Institutions Code, i.e., sections 11054 and 11265, is significant. Section 11054, which is a general provision applicable to all of the public assistance programs in part 3 of division 9, requires applicants for these programs merely to file an "affirmation" of eligibility prior to receiving aid. In the next sentence, the statute expressly mentions the AFDC program and states that "in the case of applicants for aid to families with dependent children," these "statements" of eligibility "shall contain a written declaration that the affirmation is made under penalty of perjury." Thus, of all the programs in part 3, only AFDC applications are required by section 11054 to be completed under penalty of perjury.

The third sentence of section 11054 contains the statement that "[a]ny person signing a statement *containing such declaration*...is subject to the penalty prescribed for perjury in the Penal Code" if he or she willfully and knowingly and with intent to deceive makes a false statement. (Italics added.) The explicit function of this third sentence is to authorize a perjury prosecution under section 118. Moreover, that legislative purpose is aimed specifically and exclusively at AFDC applications. The only referent for "a statement containing such declaration" in the third sentence is language in the second sentence which refers to a "statement[]...contain[ing] a written declaration" that the affirmation of eligibility is made under penalty of perjury. The quoted language from the second sentence, in turn, applies solely to AFDC applicants. The conclusion is unavoidable that section 118 has been incorporated into the AFDC program by virtue of section 11054, at least as to initial applications for benefits.

The situation is only slightly different with respect to annual redeterminations of aid and monthly eligibility reports. Section 11054 permits a county to require "new statements" at any time for purposes of continuing assistance. Section 11265, which is one of the AFDC provisions in chapter 2, obliges a family receiving AFDC to complete a "certificate

of eligibility" at each annual redetermination of eligibility. It also permits the county to require such certificates "monthly or at such other intervals as may be deemed necessary. . . ." Each adult member of the family is obligated to provide "under penalty of perjury" the information necessary to complete such certificate.

Under other circumstances, it might be possible to infer that section 118 does not apply to misstatements on such certificates since neither section 11265 nor any other provision in chapter 2 contains language like that of section 11054, explicitly making such misstatements "subject to the penalty prescribed for perjury in the Penal Code." However, the history of section 11265 reveals this inference to be incorrect.

Prior to 1971, section 11265 did not contain the requirement that information relevant to a certificate of eligibility be provided under penalty of perjury. Instead, it provided that "[a]ny person signing such certificate who willfully states therein any material matter which he knows to be false is *guilty of a misdemeanor.*" (Italics added.) Relying in large part upon this language, the Court of Appeal held that section 11265 was a special statute pertaining to redetermination certificates and thus precluded prosecutions for perjury for any misstatements. (*People* v. *Smith* (1967) 248 Cal.App.2d 134 [56 Cal.Rptr. 258].)

In 1971, the Legislature deleted the language relied upon in *Smith.* (Sen. Bill No. 796 (1971 Reg. Sess.); Stats. 1971, ch. 578, § 25, p. 1154, eff. Aug. 13, 1971.) In place of the misdemeanor provision, the Legislature inserted the present sentence, obligating a family to provide the necessary information "under penalty of perjury." Shortly after this substitution was made in Senate Bill No. 796, an analysis of the bill was prepared by the Legislative Analyst. The proposed amendment to section 11265 was described as follows: "Section 25 of this bill proposes elimination of the current provisions defining attempts to fraudently secure AFDC assistance as a misdemeanor. It further provides that persons attempting to secure such aid fraudulently shall *be deemed to be guilty of perjury.*." (Analysis of Sen. Bill No. 796 (as amended Aug. 10, 1971) by Leg. Analyst, at p. 17, original underscoring deleted, italics added.)[14]

---

[14]The Legislative Analyst's description was somewhat misleading, for Senate Bill No. 796 did not propose elimination of *all* provisions that treated attempted AFDC fraud as a misdemeanor. The bill left section 11482 intact. Nor did the amendment proposed in Senate Bill No. 796 provide that *all* attempts to secure AFDC benefits fraudulently would be punishable as perjury. By its very terms, the amendment to section 11265 applied only to annual redeterminations and monthly eligibility reports.

These overbroad statements in the Legislative Analyst's report do not aid respondent,

In light of this history, the conclusion appears unavoidable that the Legislature intended the perjury provisions of the Penal Code to be available as an alternative charge for misstatements made in connection with annual redeterminations and monthly eligibility reports.

Respondent tenders two arguments in support of her contention that section 11483 bars prosecution under section 118. Initially, she points out that the penalty provisions of section 11483 were enacted in 1970, well after the language had been added to section 11054 explicitly authorizing perjury prosecutions.[15] To the extent these two statutes conflict, she argues, the later enactment (§ 11483) should prevail as an implied repeal of the older statute.

The difficulty with this contention is that it proves too much. If the 1970 amendments to section 11483 constituted an implied repeal of the language in section 11054, then it would seem to follow that the 1971 amendment to section 11265 impliedly repealed both sections 11482 and 11483. This court can discern no such legislative intent. The more logical interpretation is that the Legislature has permitted perjury prosecutions as an alternative to AFDC fraud.

Finally, respondent points out that section 11483 contains a requirement that "all actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850." (Cf. fn. 2, *ante*, at p. 498.) In *People* v. *McGee* (1977) 19 Cal.3d 948, 955 [140 Cal.Rptr. 657, 568 P.2d 382], this court held that this provision "must be accorded mandatory effect" and that the state could not bring a criminal action for AFDC fraud until it had sought restitution. These holdings were based squarely on our finding that this restitution requirement was intended by the Legislature to "provide protection for individuals accused of welfare fraud...." (*Id.*, at p. 961, original italics deleted.)

---

however, for they suggest that some legislators may have believed the 1971 amendment was even more punitive than in fact was true. At the very least, the 1971 amendment to section 11265 undermined the reasoning of *People* v. *Smith, supra.*

[15]Most of the language at issue in section 11054 was added to former section 1550 by the Legislature in 1953. (Stats. 1953, ch. 778, § 1, p. 2082.) In 1963, section 1550 was replaced by former section 449.4, which in turn was replaced by section 11054 in 1965. (Stats. 1963, ch. 510, § 1.5, p. 1373, and § 2, p. 1377; Stats. 1965, ch. 1784, § 2, p. 3978, and § 5, p. 3999.) Section 11054 has remained unchanged since 1965.

Prior to its amendment in 1970, section 11483 read: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, *obtained* aid for a child not in fact entitled thereto, the person obtaining such aid shall make restitution and all actions necessary to secure restitution may be brought against him." (Stats. 1965, ch. 1784, § 5, p. 4018.)

■ Respondent complains that if a perjury prosecution is permissible as an alternative to section 11483, the state can circumvent this protection by the simple device of charging perjury rather than AFDC fraud, thereby frustrating legislative intent. It is noted that a divided Court of Appeal in *People* v. *Batten* (1978) 86 Cal.App.3d 848 [150 Cal.Rptr. 567] approved a perjury prosecution for misstatements in obtaining AFDC benefits without requiring the state to conform to the restitution requirement of *McGee*.

Respondent's argument has merit. Allowing a perjury prosecution to go forward where the state has made no attempt at restitution would fly squarely in the face of the Legislature's repeated insistence on a request for restitution. That intent was manifested for the first time in 1957 (see *People* v. *McGee, supra,* 19 Cal.3d at p. 959) and was reiterated in the 1970, 1977, and 1979 amendments to section 11483.

However, the consequence of accepting this argument should not be to bar prosecutions for perjury. Rather, the various legislative intents can be easily harmonized. To carry out the Legislature's oft-expressed wishes with regard to restitution, no prosecution under section 118 for AFDC fraud may be commenced until the restitution requirements set forth in section 11483 are satisfied.[16]

### III.

■ An individual cannot commit AFDC fraud without also violating the perjury provisions of the Penal Code. However, there is overwhelming evidence that by incorporating section 118 into the AFDC program via sections 11054 and 11265, the Legislature intended to permit prosecutions for AFDC fraud to proceed either under section 11483 or section 118. Therefore, under these limited facts, the usually conclusive rule that specific statutes preclude a prosecution for a general crime must give way to the clear and incontrovertible evidence of the Legislature's intent. The superior court's order dismissing the perjury charge is reversed.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

**RICHARDSON, J.**—I concur in the judgment and in the majority's holding that "there is overwhelming evidence that by incorporating sec-

---

[16]In this regard, the Court of Appeal decision in *People* v. *Batten, supra,* 86 Cal.App.3d 848, is disapproved.

tion 118 into the AFDC program via sections 11054 and 11265, the Legislature intended to permit prosecutions for AFDC fraud to proceed either under section 11483 or section 118." (*Ante*, p. 509.)

In view of the clear legislative intent to allow a perjury prosecution here, it is unnecessary to discuss application of the rule of construction that "specific statutes preclude a prosecution for a general crime..." (*ibid.*), and I do not join in the majority's extended treatment of that issue.

Clark, J., concurred.

Respondent's petition for a rehearing was denied January 14, 1981.