139 Cal.App.3d 812 (1983)
189 Cal. Rptr. 84
Estate of MARY McBRYDE FEENEY, Deceased.
PATRICK FORD, Petitioner and Respondent,
v.
LUCILLE J. BOSTON, as Executrix, etc., Objector and Appellant; BARBARA FORD et al., Claimants and Respondents.
Docket No. 27035.
Court of Appeals of California, Fourth District, Division Two.
February 10, 1983.
*815 COUNSEL
Lucille J. Boston, in pro. per., Frederick E. Watson and Arthur E. Azdair for Objector and Appellant.
Fine, Perzik & Friedman and Paul A. Beck for Petitioner and Respondent and for Claimants and Respondents.
*816 OPINION
McDANIEL, J.
Pursuant to the provisions of the last will and testament of Mary McBryde Feeney (decedent), Lucille J. Boston (appellant) was nominated and duly appointed as executrix of decedent's will. The beneficiaries under the will were decedent's son and daughter, Patrick and Barbara Ford. The principal asset of the estate consisted of decedent's residence in Palm Desert.
In the course of probate, pursuant to a petition for confirmation of sale, the trial court issued an order confirming the sale of the residence to Frank M. Willard. Escrow was to close in March 1981. Willard, however, failed to deposit the sums required to close the sale, and later cancelled the escrow. In April 1981, Graham Cribbs, attorney for the estate, prepared petitions to vacate the sale to Willard and confirm a new sale to Sherman White. Boston, however, refused to sign the petitions. (1) (See fn. 1.) Patrick Ford, through his attorney, Chandler Brown, then filed a petition for removal[1] of Boston as executrix and requested orders directing Cribbs to execute petitions to vacate the sale to Willard and confirm the new sale.[2] The trial court issued the orders requested in the petition and also issued a citation to Boston to show cause why she should not be removed as executrix.
At the hearing on the removal petition, Boston appeared in propria persona. Although a reporter was present, no record of the hearing was transcribed. After the hearing, the court issued orders removing Boston as executrix (the order of removal was not formally entered until later) and granting the petitions to vacate the sale to Willard and confirm the sale to White. Boston then filed a motion for reconsideration and a petition for instructions. After a second hearing, the court denied the motion for reconsideration and ruled that Boston lacked standing to petition for instructions because she had already been removed as executrix. The court denied her requests for specific findings, overruled her objections to proposed findings of fact and conclusions of law and entered and adopted same. Additionally, the court appointed Chandler Brown and Alex Steinberg, attorneys for the beneficiaries, as special coadministrators *817 of the estate.[3] The court later added an order directing Boston to provide an accounting.
On June 9, 1981, White revoked his offer to purchase the residence. About seven months later the court issued orders vacating the sale to White and confirming the sale of the property to a new buyer, Martha Fluor.
(2) (See fn. 4.) Boston appealed[4] from the order removing her as executrix, as well as from all of the aforementioned orders consistent with and related thereto. She also contends that she was denied due process of law at the removal hearing.
Initially, however, we must address a problem posed by the record in this appeal. (3) While most of appellant's contentions concerning her removal relate to facts and circumstances presumably adduced at the removal hearing, the record on appeal contains neither a transcript of that hearing, nor a settled statement, nor a stipulated set of facts. Notwithstanding this yawning gap in the record, Boston has cited a mountain of facts in support of her contentions, most of which lie outside the record. This is patently improper. (See Cal. Rules of Court, rule 13; Ehman v. Moore (1963) 221 Cal. App.2d 460, 462-463 [34 Cal. Rptr. 540].)
Because we cannot consider facts and circumstances outside the record, accordingly, we shall treat this as a judgment roll appeal. (4) In such an appeal, we are confined to a determination of whether the trial court's findings are within the issues; whether the judgment is supported by the findings, and whether reversible error appears on the face of the record.[5] (Montaldo v. Hires Bottling Co. (1943) 59 Cal. App.2d 642, 646 [139 P.2d 666]; Estate of Larson (1949) 92 Cal. App.2d 267, 268 [206 P.2d 852]; Ducray v. Ducray (1967) 257 Cal. App.2d 480, 482-483 [64 Cal. Rptr. 825].)

*818 DISCUSSION

I

Inherent Power of Removal
The trial court found that Boston "refused to proceed to vacate the WILLARD sale or confirm the WHITE sale until such time as the pending litigation ... which was filed by Lucille Boston on behalf of Mary Ford ... was resolved." The court also found that the "Executrix admitted during testimony that she feared the dismissal of the litigation could result in a malicious prosecution action." Based on these facts, the court concluded: "The potential personal liability of Lucille Boston conflicted with the Executrix' duty to, with due speed, sell the property and close the estate, and the Executrix acted in her own personal interests in refusing to vacate the WILLARD sale and confirm the WHITE sale until the law suit was resolved."
(5) It is well recognized that the court has inherent power, independent of statute, to remove a trustee "who acquires any interest or becomes charged with any duty adverse to the interest of his beneficiary...." (Estate of Guzzetta (1950) 97 Cal. App.2d 169, 172 [217 P.2d 460].) A "mere potential conflict," however, unaccompanied by adverse actions will not suffice to justify removal of the trustee. (Estate of Wemyss (1975) 49 Cal. App.3d 53, 61 [122 Cal. Rptr. 134].)
(6) Having carefully reviewed the findings, and extending all benefit of the doubt to the judgment of the trial court, we are yet unable to perceive any conflict of interest between the executrix and the estate beneficiaries. The findings relate that Boston's potential liability to suit for malicious prosecution somehow conflicted with her interest to sell the property and close the estate with all due speed. But they do not state precisely how, if at all, these two events are related. Moreover, on the record before us, we are at a loss to supply, through any conceivable theory, the missing link.[6] Therefore, we are constrained to conclude that the findings are insufficient as a matter of law to support the order for removal on the basis of the court's inherent power.

*819 II

Statutory Power of Removal
Nor was removal proper under section 521 of the Probate Code. Section 521 provides, in pertinent part: "Whenever a judge of the court has reason to believe from his own knowledge, or from credible information, that any executor or administrator has wasted, embezzled or mismanaged, or is about to waste or embezzle the property of the estate committed to his charge, or has committed or is about to commit a fraud upon the estate, or is incompetent to act, or has permanently removed from the state, or has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, he must cite such executor or administrator to appear and show cause why his letters should not be revoked, and may suspend his powers until the matter is investigated."
The trial court concluded that "The Executrix did neglect and mismanage the Estate by refusing to vacate the WILLARD sale and to approve the WHITE sale." Boston contends that the judgment, as based upon section 521, was flawed for two reasons: (1) because section 521 must be harmonized with Probate Code section 758, which provides for remedies in connection with nonimplemented sales of property; and (2) because the order of removal constituted an abuse of discretion.
Section 758 provides: "If the executor or administrator neglects or refuses to sell any property of the estate when it is necessary or when it is for the advantage, benefit and best interests of the estate and those interested therein, or when the executor is directed by the will to sell the same, any person interested may petition the court for an order requiring the executor or administrator to sell...."
(7a) Boston contends that sections 521 and 758 must be read together and construed as representing a single statutory scheme. The result of such a reading, she contends, would be that "in every case where the `mismanagement' relied upon as grounds for removal under section 521, consists solely of neglect or refusal to sell estate property ... an order must be issued directing the personal representative to make the sale, and giving [sic] a reasonable time for compliance with the order, before removal could properly be effected."
(8) Boston's argument appears to rest implicitly on the canon of construction which holds that when two statutes conflict, but one is more specific and the other more general, the more specific one controls. (See People v. Jenkins *820 (1980) 28 Cal.3d 494, 501-502 [170 Cal. Rptr. 1, 620 P.2d 587]; People v. Garcia (1981) 115 Cal. App.3d 85, 109 [171 Cal. Rptr. 169].) A "`special statute, [however], does not supplant a general statute unless all of the requirements of the general statute are covered in the special statute.'" (People v. Jenkins, supra, 28 Cal.3d 494, 501-502, quoting People v. Isaac (1976) 56 Cal. App.3d 679, 683 [128 Cal. Rptr. 872].) (7b) As we shall demonstrate, the evidence required to prove "mismanagement" under section 521 is qualitatively different from the evidence required to obtain an order compelling sale under section 758. Therefore, section 758 does not by its terms necessarily supplant section 521.
While it is true that statutes in pari materia must be read together and harmonized (see Pesce v. Dept. Alcoholic Bev. Control (1958) 51 Cal.2d 310, 312 [333 P.2d 15]; Estate of Risse (1957) 156 Cal. App.2d 412, 421 [319 P.2d 789]), it does not necessarily follow that appellant's construction is the only logically consistent means of doing so. The fact that the code contains two separate remedies, one harsher than the other, hardly compels the conclusion that the less drastic one must always be applied first. An equally acceptable interpretation is that the Legislature, in enacting both, intended to provide the courts with a choice of remedies, to be applied at their discretion.
While this precise question appears to be one of first impression in California, one can easily imagine a future case in which an administrator's neglect or refusal to sell estate property would rise to the level of mismanagement justifying removal. Indeed, such a case was Knight v. Wacaser (1942) 317 Ill. App. 162 [46 N.E.2d 176], in which the court ordered removal of an administrator who had delayed selling the assets of the estate for over 14 years. The interpretation urged by appellant would severely restrict our state courts' ability to deal effectively with such egregious cases. Construed as we suggest, however, sections 521 and 758 provide a valuable choice of remedies.
Of course, the question remains whether that choice was exercised reasonably in this case, or whether the trial court abused its discretion in removing Boston as executrix under section 521 rather than ordering her to sell the property under section 758.
(9) Removal of an executor appointed by will obviously defeats the will of the decedent and, therefore, should not be resorted to for light or insubstantial reasons. (Estate of Cole (1966) 240 Cal. App.2d 324, 332 [49 Cal. Rptr. 419].) To be sure, "[t]he trial court exercises a broad discretion in such matters [citations], but as the court stated in In re Welch, 86 Cal. 179, at 183 [24 P. 943]: `While it is the duty of the courts to protect carefully the interests of estates, the rights of those who are appointed to take charge of and manage them should not be overlooked; and an administrator should not be removed except for good and *821 sufficient cause.'" (Estate of Wacholder (1946) 76 Cal. App.2d 452, 456 [173 P.2d 359]; see also Estate of Cole, supra, 240 Cal. App.2d 324, 332.)
The trial court in this case found that prompt sale was in the best interest of the estate in order to avoid the "off-season" for selling real estate in the Palm Desert area (the summer). This, plus the court's finding that "No legitimate reason existed for the Executrix to refuse to vacate the WILLARD sale and confirm the WHITE sale,"[7] purported to provide the evidentiary foundation for its conclusion that removal was proper under section 521.
(10) While the court's findings clearly support an order to compel sale under section 758, these findings do not support an order of removal under section 521. Section 521 is clearly designed to deal with administrative malfeasance amounting to a moral wrong. (See Annot., 132 A.L.R. 1473, 1479.) Placement of "embezzle[ment]" and "waste" alongside "mismanagement" as causes for removal under the provisions of section 521 underscores this point. Failure to reserve removal for the most serious of malefactions would, in short order, obliterate the distinction between sections 521 and 758 which we have taken pains to preserve. Not every error of judgment amounts to a violation of a fiduciary trust. As the court (reversing an order of removal) in Estate of Buchman (1954) 123 Cal. App.2d 546 [267 P.2d 73, 47 A.L.R.2d 291], stated: "No man is infallible; the wisest makes mistakes; but the law holds no executor responsible for the consequences of his mistakes which are the result of imperfection of human judgment and do not proceed from fraud, gross carelessness, or indifference to duty." (Id., at p. 556.) As previously noted, there was no showing here of bad faith or cupidity on the part of the executrix. An order compelling Boston to sell the property in question would have adequately protected the interests of the estate. Hence, we hold that the trial court abused its discretion in removing Boston as executrix of Mrs. McBryde Feeney's estate.

DISPOSITION
The trial court's order removing appellant as executrix is reversed, and she is restored to the office of executrix. Under the provisions of Probate Code section 466, the powers of the special coadministrators automatically cease upon the restoration of appellant to her office. In all other respects the judgment is affirmed.
*822 Our decision to reverse the trial court's order of removal effectively answers respondent's contention that the appeal is frivolous.
Morris, P.J., and Rickles, J., concurred.
NOTES
[1] Appellant contends that the petition for removal was invalid because it was not accompanied by a signed and sworn affidavit of Patrick Ford. Probate Code section 521 provides for removal "[w]henever a judge ... has reason to believe from his own knowledge, or from credible information" that an administrator has mismanaged the estate committed to his charge. Therefore, the judge was entitled to act on the attorney's statements standing alone.
[2] On the same date, Cribbs filed a declaration to withdraw as attorney for the estate on essentially the same grounds as were stated in the petition. Boston then apparently sent Cribbs a substitution of attorneys, which was not signed and filed until May 1, 1981. It thus appears, contrary to Boston's assertion, that Cribbs still had the authority to execute the said petitions on April 27, 1981.
[3] At this hearing the court also vacated findings of fact and conclusions of law which had been prematurely entered.
[4] We earlier made two rulings in the course of this appeal, one striking appellant's opening brief and granting leave to file a new brief, and the other denying without prejudice respondents' motion to dismiss.

In their motion to dismiss, respondents contend, with respect to the trial court's orders vacating the old and confirming the new sale, that: (1) appellant lacked standing to contest the orders; (2) the issues are moot; and (3) the orders are nonappealable. However, to the extent that the orders from which Boston appealed formed the basis of the trial court's orders confirming the sale to White and revoking appellant's letters testamentary, both of which are appealable orders under Probate Code section 1240, we conclude that the orders listed in Boston's notice of appeal are not moot, and are reviewable. Clearly, Boston has standing to contest the order of removal and all orders related to it.
[5] Obviously, in the absence of a transcript, we cannot reach appellant's contention that she was denied due process at the removal hearing. While the record does contain a transcript of the later hearing on the motion for reconsideration, this transcript does not provide a substantial enough record to judge the merits of appellant's due process contentions.
[6] In her opening brief, Boston asserts: "... the fact was that the executrix ... felt it would not be wise to go forward with the sale to White until the Harris' action was resolved by settlement, and it was known what amount of cash would be received from that settlement, so that it could in turn be determined what amount of cash downpayment should be received from White, in order to meet the cash requirements of the estate." While a more plausible explanation than anything contained in the trial court's findings, these facts are entirely outside the record and are not cognizable by the court.
[7] Again citing facts not contained in the record, appellant asserts that she refused to confirm the new sale because she believed that the estate, during the period between the sale to Willard and the proposed sale to White, had developed greater cash needs and therefore that the new contract required a larger cash deposit. As previously noted, we take no cognizance of facts outside the record.