[No. E007090. Fourth Dist., Div. Two. Jan. 10, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR GEROME VAZQUEZ, Defendant and Appellant.

[Opinion certified for partial publication.*]

_____

*Part C, subdivisions 1, 2, 4 and 5 are not published; they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**Counsel**

William Flenniken, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney

General, Pat Zaharopoulos and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TIMLIN, J.—

## A. INTRODUCTION

Victor Gerome Vasquez (defendant) has appealed from a judgment following a jury trial. The jury found him guilty of two counts of assault with a firearm, one count of taking or driving the car of another with intent to deprive the owner of possession or title, one count of kidnapping, one count of sexual battery with the intent to cause sexual gratification, arousal or abuse, one count of forcible oral copulation, one count of attempted rape, and one count of forcible rape. The jury also found to be true the enhancement allegations that defendant used a firearm in the commission of six of the crimes charged, and that defendant kidnapped the witness for the purpose of committing the forcible rape and forcible oral copulation.

Defendant was sentenced to the midterm of six years on count six (forcible oral copulation) and to the midterm of six years on count eight (forcible rape), with those sentences to run consecutively. His sentence was increased by another nine years because of enhancements as to counts six and eight pursuant to Penal Code section 12022.3 (use of a firearm in the commission of forcible rape and forcible oral copulation) and as to count six pursuant to Penal Code section 667.8, subdivision (a) (kidnapping for the purpose of committing forcible oral copulation). This total sentence of 21 years was not stayed.

Defendant was also sentenced to the midterm of three years on count one (assault with a firearm), to the midterm of two years on count two (taking the vehicle of another), plus a two-year enhancement for personal use of a firearm, to the midterm of two years on count three (assault with a firearm),[1] to the midterm of five years on count four (kidnapping), plus a two-year enhancement for personal use of a firearm, to the midterm of two years on count five (sexual battery), plus a two-year enhancement for personal use of a firearm, to the midterm of two years on count seven (attempted rape) plus a three-year enhancement for use of a firearm in the commis-

---

[1] This appears to be an inadvertent error by the trial court because the midterm imprisonment sentence for a violation of Penal Code section 245, subdivision (a)(2) is three years.

sion of attempted rape, and as to count eight a three-year enhancement for kidnapping for the purpose of committing rape. These sentences were stayed.

Defendant raises five issues on appeal: (1) he could not be convicted of the unlawful taking of the car because he believed the complaining witness was its owner, and he did not take the car from her; (2) he could not be convicted of both rape and attempted rape, based on the facts adduced at trial; (3) he could not be convicted of kidnapping, because, under the facts adduced at trial, he had committed the more specific crime of abduction for defilement; (4) the trial court erroneously and prejudicially excluded his exculpatory statements to a police officer; and (5) the trial court erroneously and prejudicially refused to instruct the jury on the defense of voluntary intoxication.

We conclude that each of these contentions is without merit and will affirm with a modification of the sentence on count three.

## B. FACTS

Ms. N. (witness) worked as a waitress at Club Metro in Rubidoux (not in Moreno Valley as indicated by the People's respondent's brief). On October 15, 1987, she finished her shift at about 9:30 or 10 p.m. Her employer asked her to stay around until midnight in case it got busy. While she waited, she sat in a booth and chatted with her friend Chris. She ultimately decided to wait until her friend Gwen, another employee, got off work at 2 a.m., so that she and Gwen could go out to breakfast and then drive home in Gwen's car. It was agreed that they would also take Chris home.

Gwen's sister also worked at the club. Although she was not working that evening, she came in to borrow Gwen's car keys, which also happened to fit the lock of the sister's car. The sister had locked her own keys in her car. The trio waited for her return; when she did not come back, Gwen got a ride with the club's bouncer to her home to pick up a spare set of keys.

The club having closed, the witness and Chris first sat outside by the club's front door. Gwen's sister finally returned and gave them the keys to Gwen's car, so they went and sat in the car and talked while they waited for Gwen to return.

While they were talking, defendant came up to the driver's side of the car and asked the witness where everyone had gone. He appeared to be attempting to hide his face. The witness answered briefly, and rolled her window back up. Shortly thereafter, defendant appeared beside the passenger side of

the car, pointing a long-barreled gun at Chris and also attempting to hide his face. Chris stated that he did not have any money, and defendant stated he did not want any money; he wanted the witness. He ordered Chris out of the car, climbed in, and told the witness to drive off, all the while pressing the gun into her side.

Defendant had the witness drive the car to the back of the club from the front where it had been parked. When they reached the back area of the club, he told her to stop the car. While holding the gun at the witness's neck, defendant forced her to orally copulate him and while doing so, she accidentally bumped the car's horn. Defendant became upset and told her to restart the car, after which he sexually assaulted her. He then directed her to drive down various streets, which she did with the gun at her side, until they arrived at a dead end. He had her stop the car, and then he attempted to rape her in the car. Because of their cramped positions, the witness complained that defendant was hurting her and that it would not work. Defendant got out of the car and ordered the witness to get out. After some discussion, defendant selected another location outside the car and raped the witness there. She began to cry, and he threatened to kill her if she didn't stop. They got back into the car, with the witness driving, and he directed her to drive back to the club.

When they reached the back area of the club, he told her to drive toward the Goodyear store at the end of the back area. He told her to stop the car, and to hand him the keys. She did so and he got out of the car, and warned her not to try anything funny because he would shoot her. He then walked away. As she sat in the car, she saw a police car coming around the corner. After the witness and defendant first drove away from the club, Chris, of course, had immediately run across the street and called 911, to tell the police that the witness had been kidnapped by a man with a gun.

The witness got out of the car and began yelling that the defendant was behind a nearby trash dumpster. It was quite foggy, however, and the police were not able to find defendant. They did discover a pickup parked near the Goodyear store in the back area, which was otherwise fairly deserted. This pickup contained a soft gun case for a long-barreled gun, which was left in plain sight on its front seat. The police ran a check on its license plate, and it came back registered to Victor Gerome Vasquez. The police knew that they were looking for a male of Mexican background, whose name was "Victor," and who had a long-barreled gun. Defendant was ultimately contacted by the police for questioning and arrested.

## C. Discussion

### 1., 2.*

. . . . . . . . . . . . . . . . . . .

### 3. *The Defendant Was Properly Convicted of Kidnapping*

██ Defendant contends that under the facts of this case, the crime of kidnapping (Pen. Code, § 207) is preempted by what he contends is the more specific crime of abduction for marriage or defilement. (Pen. Code, § 265.)

Penal Code section 207 provides, in relevant part,

"(a) Every person who forcibly steals, takes or arrests any person in this state, and carries the person into another country, state or county, or into another part of the same county, is guilty of kidnapping."

Section 265 provides:

"Every person who takes any woman unlawfully, against her will, and by force, menace or duress, compels her to marry him, or to marry any other person, or to be defiled, is punishable by imprisonment in the state prison."

Defendant initially relied on the case of *People* v. *McCullar*† (Cal.App.) as support for his argument that under the facts of this case, section 207 was preempted by section 265. However, in his reply brief, he notes that *McCullar* was depublished after the opening brief was filed, and cites no other authority in support of his argument.

Defendant's contention that section 207 is preempted by section 265 is incorrect. ██ Preemption occurs when the state, as opposed to local government, has assumed control of a particular subject of regulation. In such a case, the state law preempts any local attempt to regulate the subject. (*People* v. *Bertoldo* (1978) 77 Cal.App.3d 627, 633 [143 Cal.Rptr. 675].) ██ Defendant's argument is really based on the special statute doctrine, i.e., that "[p]rosecution under a general statute is precluded by a special statute when the general statute covers the same matter as, and thus

---

*See footnote, *ante*, page 988.

†Reporter's Note: Opinion (F010569) deleted upon direction of Supreme Court by order dated July 18, 1990.

conflicts with, the special statute." (*People* v. *Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269], disapproved of on another ground in *People* v. *Jenkins* (1980) 28 Cal.3d 494, 503-504, fn. 9 [170 Cal.Rptr. 1, 620 P.2d 587].)

The special statute doctrine applies only if it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute. (*People* v. *Jenkins, supra*, 28 Cal.3d at p. 502.) Here, a violation of the "special" statute, section 265, does not necessarily or commmonly result in a violation of the "general" statute, section 207.

Section 207 requires, as an element, a forcible taking of the victim. This force may be accomplished by physical force or by the giving of orders which the victim feels compelled to obey because of fear of harm or injury. (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 659-660 [111 Cal.Rptr. 556, 517 P.2d 820], overruled on another ground, *People* v. *Pope* (1979) 23 Cal.3d 412, 426, fn. 16 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Enticing the victim by fraud or deceit to go with the perpetrator will not support a kidnapping charge. (*Ibid.*) In contrast, a violation of Penal Code section 265 ("abduction for defilement") can be accomplished without proof of the use of force to accomplish the unlawful taking away of the victim (*People* v. *Marshall* (1881) 59 Cal. 386, 388; *People* v. *Moore* (1961) 196 Cal.App.2d 91, 99 [16 Cal.Rptr. 294]), and may in fact be established if the taking is accomplished by "improper solicitations or inducements." (*People* v. *Marshall, supra*, at p. 388.) Thus, defendant's contention that he could not be charged with kidnapping must fail.

4., 5.*

. . . . . . . . . . . . . . . . . . . . .

## D. DISPOSITION

The judgment is affirmed as to all counts and enhancements, except that defendant's sentence as to count three is corrected to be three years with a stay of execution rather than two years with a stay of execution. The trial

---

*See footnote, *ante*, page 988.

court is directed to prepare an amended abstract of judgment and to forwarda copy of the amended abstract to the proper correctional authorities.

Dabney, Acting P. J., and McDaniel, J.,* concurred.

A petition for a rehearing was denied February 8, 1991, and appellant's petition for review by the Supreme Court was denied March 20, 1991.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.