[No. B056088. Second Dist., Div. One. Apr. 7, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN MANUELAS MOLINA, Defendant and Appellant.

**COUNSEL**

Fred Kilbride, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Pamela C. Hamanaka and Sanjay T. Kumar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—Alan Manuelas Molina appeals from the judgment (order granting probation) entered after his conviction by the court of perjury. (Pen. Code, former § 118, now § 118, subd. (a), the perjury case.)[1] Molina also appeals from the court's finding that he violated the "obey all laws" condition of probation previously imposed after his negotiated guilty plea to grand theft and two counts of forgery. (§ 487, subd. 1; former § 470, now § 470, subd. (a), the grand theft case.)

In the perjury case, Molina submitted a knowingly false driver's license application under oath to the Department of Motor Vehicles (DMV). We reject Molina's contention that because his criminal conduct was more specifically proscribed by Vehicle Code section 20's misdemeanor prohibition on making false statements in documents filed with DMV, he can be prosecuted only for that misdemeanor and not for perjury, a felony.[2] At the probation violation hearing in the grand theft case, the trial court found that Molina violated his probation by possessing a fraudulently obtained driver's license (Veh. Code, former § 14610, subd. (a), now § 14610, subd. (a)(1)). We reject Molina's contentions that that section requires that the fraudulently possessed license be possessed for a fraudulent purpose, and that the evidence is insufficient to support the finding that Molina violated his probation.[3]

We affirm the judgments (orders granting probation and finding Molina in violation of probation).

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

In 1989, former section 118, of which Molina was convicted, was renumbered as section 118, subdivision (a) without substantive change. Section 118, subdivision (a) provides in relevant part that ". . . every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury."

[2]Every driver's license application, new or renewed, "shall be signed and verified by the applicant before a person authorized to administer oaths . . . ." (Veh. Code, § 12802.) "It is unlawful to use a false or fictitious name, or to knowingly make any false statement or knowingly conceal any material fact in any document filed with the [DMV] . . . ." (Veh. Code, § 20.) "A violation of any of the following provisions shall constitute a misdemeanor . . . : [¶] Section 20, relating to false statements. . . ." (Veh. Code, § 40000.5.) Felonies are "crime[s] . . . punishable . . . by imprisonment in the state prison." (§ 17, subd. (a).) "Perjury is punishable by imprisonment in the state prison . . . ." (§ 126.)

[3]In 1990, former subdivision (a) of Vehicle Code section 14610, which the trial court found Molina violated, was renumbered as subdivision (a)(1) without change. Vehicle Code section 14610, subdivision (a)(1) provides: "(a) It is unlawful for any person: [¶] (1) To display or cause or permit to be displayed or have in his possession any canceled, revoked, suspended, fictitious, fraudulently altered, or fraudulently obtained driver's license."

## FACTS

Molina does not challenge the sufficiency of the evidence. Sometime in 1979, DMV issued Molina a driver's license in his true name. On March 23, 1987, Molina applied to and received from DMV a second driver's license in the name of Joseph Alan Molina. Molina's application stated he had not applied for a driver's license within the past 12 months, had never had a California driver's license or identification card, and had not applied for a California driver's license or identification card in a different name in the past 7 years. Molina signed the March 23, 1987, license application certifying under penalty of perjury that all the information on it was true. On June 11, 1987, DMV renewed the first license in Molina's true name.

According to a DMV driver's license manager, people seeking renewal of current licenses must complete the same application under penalty of perjury as must new license applicants. DMV generally destroys renewal applications after renewing the license. All license and renewal applicants must complete and sign an application form under penalty of perjury.

On January 7, 1988, Molina pled guilty to grand theft and two counts of forgery in the grand theft case. On March 23, 1988, the trial court suspended sentence and placed Molina on probation for five years on condition, among others, that he "obey all laws, orders, rules and regulations of the probation department and of the court." The trial court then dismissed the remaining eight forgery counts.

On August 24, 1989, while searching Molina pursuant to a lawful arrest, Glendale Police Officer M. Bunsey found both licenses on Molina's person. Each license contained Molina's picture. The renewed license in Molina's name listed a July 3, 1952, birthdate, while the license issued to Joseph Alan Molina listed an August 9, 1953, birthdate. As a result, Molina was charged with a single perjury count, and with violating his grand theft probation.

Molina waived jury in the perjury case, and the trial court heard the perjury trial concurrently with the grand theft probation violation hearing. Before trial, Molina moved that the trial court determine only whether he gave false information to DMV (Veh. Code, § 20), and dismiss the perjury charge (§ 118, subd. (a)), because giving false information to DMV is the controlling specific statute, while perjury is an inapplicable general statute.

The trial court denied the motion, stating: "[U]nder [A]uto [E]quity [S]ales[, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455], there is a case on point from the Court of Appeal, the [People v.] Barrowclough[ (1974) 39

Cal.App.3d 50] case, which specifically holds, contrary to the position that [Molina] is advancing, while [Molina] seeks to distinguish that case and indicates that it's been impliedly disapproved by [People v.] Jenkins [(1980) 28 Cal.3d 494], Jenkins was a different factual situation th[a]n Barrowclough. Barrowclough has not been overruled by the Supreme Court, nor has it been rescinded by the Court that issued the opinion. It has been cited with approval in People [v.] Ruster [(1976) 16 Cal.3d 690, 694] by the California Supreme Court, and this Court does feel bound under Barrowclough to deny the motion." The court then heard evidence and convicted Molina of perjury.

Since Molina committed perjury before being placed on probation, the trial court refused to find the perjury to be a violation of probation. The trial court found that Molina violated his probation by possessing a fraudulently obtained license (Veh. Code, § 14610, subd. (a)(1)).

## ISSUES

Molina contends the trial court erred in: (I) convicting him of perjury (§ 118, subd. (a)), an inapplicable general statute, because his conduct amounted at most to giving false information to DMV (Veh. Code, § 20), the more specific statute; and (II) finding that he violated his probation in August 1989 by possessing a fraudulently obtained license, because that statute requires that the fraudulent license be possessed for a fraudulent purpose, and the evidence was insufficient to demonstrate the required fraudulent purpose.

## DISCUSSION

### I

In *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50 [113 Cal.Rptr. 852], the defendant was charged with perjury for filing a false driver's license application under oath. The trial court sustained the defendant's demurrer to the information and dismissed the case because "Vehicle Code section 20 'takes precedence over the general section with regard to this case.' " (*Id.* at p. 53, fn. omitted.) On appeal, Division Five of this district reversed, holding, on facts Molina concedes are identical to those before us, that "Vehicle Code section 20 does not preclude the application of [former] . . . section 118 . . . ." (*Ibid.*)

"[T]he Vehicle Code specifically requires applications for a driver's license to be verified. The purpose of requiring verification is to hold the applicant responsible for any false statements made in the application by

subjecting him to prosecution for prejury. [Citations.] [¶] Vehicle Code section 20 does not conflict with [former] . . . section 118. Vehicle Code section 20 merely renders it unlawful to use a false or fictitious name or to knowingly make a false statement or knowingly conceal any material fact *in any document filed with* [*DMV*]. Numerous documents are filed with [DMV] which are not required or authorized to be verified or made under oath. A false statement in any document filed with [DMV] may violate Vehicle Code section 20, whereas only a false statement required or authorized to be made under oath [citation] or 'under penalty of perjury' may violate [former] . . . section 118. [¶] Therefore [former] . . . section 118 does not '"include the same matter as the special act, and thus conflict with it"' under *In re Williamson* [1954] 43 Cal.2d 651, 654. Violation of [former] . . . section 118 requires an additional element not necessary to violation of Vehicle Code section 20 and therefore *Williamson* does not apply. *A special statute does not supplant a general statute unless all the requirements of the general statute are covered in the special statute.* [Citations.]" (*People* v. *Barrowclough, supra,* 39 Cal.App.3d at pp. 54-55, second italics added, fns. omitted.)

Five years later, in *People* v. *Jensen* (1979) 94 Cal.App.3d 451 [156 Cal.Rptr. 447], the defendant was charged with perjury for providing false information under oath on DMV identification card applications. The "applications included a printed notice that the information provided on the form would be checked and if any fraud was discovered, the person could be subject to prosecution under Vehicle Code section 20." (*Id.* at p. 453.) The trial court granted the defendant's dismissal motion, concluding that the defendant "could only be prosecuted under Vehicle Code section 20, in light of the express warning on the identification card application form." (*Ibid.*) On appeal, the First District affirmed, agreeing that "[b]y its express warning to the applicant that prosecution would be under Vehicle Code section 20, the state is precluded from then prosecuting him under a different and more severe criminal statute." (*Id.* at p. 455.)

Before arriving at its holding, however, the *Jensen* court rejected the defendant's alternative contention that he could be prosecuted only under Vehicle Code section 20, and not under the general perjury statute. "The Court of Appeal in *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50 [113 Cal.Rptr. 852], specifically held that Vehicle Code section 20 did not preclude prosecution under [former] . . . section 118 for false statements on a *driver's license application.* That case has since been cited without criticism by the California Supreme Court in *People* v. *Ruster* (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269], for the general principle that a special statute will not preempt a general statute unless all

the requirements of the general one are covered in the special. That is precisely the situation which exists in the instant case. As the court observed in *Barrowclough*, [former] . . . section 118 requires a false certification or verification, while that element is not necessary to commit a violation of Vehicle Code section 20. Respondent's assertion that *Ruster* impliedly undercut *Barrowclough* is frivolous. [¶] Legislative history suggests that the Legislature contemplated that providing false information on *driver's license applications* could be prosecuted under the general perjury statute. The Vehicle Code initially provided that use of a false or fictitious name on any application for an operator's license was a misdemeanor. (See, e.g., Stats. 1923, ch. 266, § 51, p. 528.) In 1925, the Legislature enacted for the first time a requirement that driver's license applications be verified by the applicant. (Stats. 1925, ch. 239, § 3, p. 395.) Cases have repeatedly held that the purpose of verification is to hold the claimant (or applicant) responsible for any false statements, thereby upholding prosecutions for perjury. [Citations.] The separate verification requirement for driver's licenses permits a reasonable inference that the Legislature specifically intended the penalty for providing false information on drivers' licenses to be different from that for providing false information on unverified documents." (*People v. Jensen, supra*, 94 Cal.App.3d at p. 454.)

 Thus, *Barrowclough* and *Jensen* together explain that Vehicle Code section 20 does not supplant perjury prosecutions under the facts of this case because: 1) perjury, the general statute, does not include the same subject matter as filing a false driver's license application under oath; 2) perjury contains an additional element not present in Vehicle Code section 20; and 3) the Legislature specifically intended that those filing false driver's license applications under oath be prosecuted for perjury.

However, Molina contends that *Barrowclough* and *Jensen* were overruled sub silentio by *People v. Jenkins* (1980) 28 Cal.3d 494 [170 Cal.Rptr. 1, 620 P.2d 587]. Molina contends *Jenkins* resolved a conflict between two lines of cases, one (including *Barrowclough*) using a "congruency" test and the other using a "common means" test, for analyzing whether a special statute supplants a general statute. Molina claims *Jenkins* resolved this "dispute" by adopting the "common means" test, rejecting the "congruency" test, and thus implicitly overruled *Barrowclough*, which he concedes was not mentioned in *Jenkins*. Molina points out that, although as noted by the trial court and *Jensen*, the Supreme Court earlier cited *Barrowclough* with approval for the proposition that "a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute" (*People v. Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]), *Jenkins* disapproved *Ruster*'s language on that

point. (*People* v. *Jenkins, supra,* 28 Cal.3d at pp. 503-504, fn. 9.) Molina concludes that, because *Barrowclough* and *Jensen* used the discredited "congruency" test in holding that submitting false license applications under oath can be prosecuted as perjury, they should be rejected, and that *Jenkins's* "common means" test compels the conclusion that he can be prosecuted only for violating Vehicle Code section 20.

As will be seen, Molina's contention lacks merit. First, the Supreme Court recently approved *Barrowclough,* and we are bound by that determination. Second, Molina's "congruency" test is simply the first, and his "common means" test the second, of the three factors *Jenkins* requires be considered in analyzing conflicting penal statutes. Because *Barrowclough* and *Jensen* correctly discuss those factors, their conclusion remains valid under *Jenkins.*

First, the Supreme Court recently approved *Barrowclough,* stating that "[g]enerally, where two statutes do not purport to deal with the same subject matter, there is no need to resort to the rule of construction that the more specific statute controls. The statutes simply do not cover the same subject matter and therefore are not in conflict. (See *People* v. *Barrowclough* (1974) 39 Cal.App.3d 50, 55 [113 Cal.Rptr. 852].)" (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 21 [276 Cal.Rptr. 303, 801 P.2d 1054].) Although *Shoemaker* did not mention *Jenkins,* and analyzed different statutes, the court clearly approved *Barrowclough's* holding that Vehicle Code section 20 and the perjury statute "do not cover the same subject matter and therefore are not in conflict." (*Shoemaker* v. *Myers, supra,* 52 Cal.3d at p. 21; see *People* v. *Barrowclough, supra,* 39 Cal.App.3d at p. 55.) Moreover, while *Jenkins* disapproved *Ruster's* language regarding when a special statute supersedes a general law (and, impliedly, similar language in the cases, including *Barrowclough, Ruster* cited in support of that proposition), it neither disapproved nor overruled the supporting cases or their holdings. *Shoemaker's* approval of *Barrowclough,* coming 10 years after *Jenkins,* conclusively rebuts Molina's argument that our Supreme Court impliedly overruled *Barrowclough.* Stare decisis compels us to reject Molina's contention without further analysis, because, apart from whether *Jenkins* adopted a new interpretation of "the rule of construction that the more specific statute controls" over a general statute (*Shoemaker* v. *Myers, supra,* 52 Cal.3d at p. 21), *Shoemaker* approves *Barrowclough's* holding that, on facts concededly identical to those before us, Molina may be prosecuted for perjury.[4] (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Even if stare decisis did not compel us to reject Molina's argument, his claim that *Jenkins* changed the rules governing analysis of conflicting penal

---

[4]Neither party cited or discussed *Shoemaker.*

provisions, impliedly overruling *Barrowclough* in the process, also lacks merit. In *Jenkins*, the defendant was charged with perjury and fraudulently obtaining aid to families with dependent children (AFDC) benefits (former § 118; Welf. & Inst. Code, former § 11483)[5] by filing false AFDC eligibility forms under oath. The trial court granted the defendant's motion to dismiss the perjury charge because it was a general statute superseded by the special AFDC fraud statute.

On appeal, the Supreme Court reversed, holding that "[a]n individual cannot commit AFDC fraud without also violating the perjury provisions of the Penal Code. However, there is overwhelming evidence that by incorporating section 118 into the AFDC program . . . , the Legislature intended to permit prosecutions for AFDC fraud to proceed either under [Welfare and Institutions Code] section 11483 or section 118. Therefore, under these limited facts, the usually conclusive rule that specific statutes preclude a prosecution for a general crime must give way to the clear and incontrovertible evidence of the Legislature's intent." (*People* v. *Jenkins, supra,* 28 Cal.3d at p. 509.)

In reaching its conclusion, *Jenkins* began its analysis by quoting " ' "the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." ' (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], citations omitted; *People* v. *Gilbert* [1969] 1 Cal.3d [475,] 479 [82 Cal.Rptr. 724, 462 P.2d 580].)" (*People* v. *Jenkins, supra,* 28 Cal.3d at p. 501.)

Next, *Jenkins* quoted from *People* v. *Isaac* (1976) 56 Cal.App.3d 679, 683 [128 Cal.Rptr. 872], relied on by the prosecution in *Jenkins*, "that '[a] special statute does not supplant a general statute unless all of the requirements of the general statute are covered in the special statute.' [Citation.]" (*People* v. *Jenkins, supra,* 28 Cal.3d at pp. 501-502.) The court then stated: "However, this analysis is defective for it is incomplete. It is true, as the *Isaac* court divined from *Gilbert,* that the *Williamson* rule is applicable when each element of the 'general' statute corresponds to an element on the face of the 'specific' statute. However, the converse does not necessarily follow. It is not correct to assume that the rule is inapplicable whenever the general statute contains an element not found within the four corners of the 'special' law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the 'special' statute

[5]Subsequent amendments to Welfare and Institutions Code section 11483 do not affect the validity of the *Jenkins* analysis.

will necessarily or commonly result in a violation of the 'general' statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute." (*Id.* at p. 502.) The court then approved other cases, including *People v. Ruster, supra,* 16 Cal.3d 690, which correctly analyzed the issue, and disapproved contrary language in *Isaac and Ruster*'s reliance on that language. (*People v. Jenkins, supra,* 28 Cal.3d at pp. 503-504.)

As the second step in its analysis, *Jenkins* determined that the defendant correctly "argue[d] that although [Welfare and Institutions Code] section 11483 contains on its face no requirement that a person's false statement to obtain AFDC benefits be made under oath or penalty of perjury, reference to other portions of the Welfare and Institutions Code reveals that *in fact* a person cannot obtain AFDC benefits without making such a statement." (*People v. Jenkins, supra,* 28 Cal.3d at p. 504.) The court stated: "It would appear that there are no situations in which an individual can violate [Welfare and Institutions Code] section 11483 without also committing perjury. The specific-versus-general rule of *Williamson,* . . . *Gilbert,* and *Ruster* would therefore seem to be applicable." (*Id.* at p. 505.)

Despite its resolution of the second step in its analysis, *Jenkins* immediately moved to a third step: "*However, due to the unique circumstances of the present case, this conclusion does not end the inquiry.* The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . .' (*People v. Gilbert, supra,* 1 Cal.3d at p. 481.) [¶] In the present case, however, there exists what can only be characterized as overwhelming indications of a contrary legislative intent. In this limited situation, the usually decisive rule that a specific statute precludes prosecution under a general statute cannot apply." (*People v. Jenkins, supra,* 28 Cal.3d at pp. 505-506, italics added.) *Jenkins* then reviewed the legislative history and concluded, as discussed above, that the defendant could be prosecuted for perjury as well as AFDC fraud. (*Id.* at pp. 506-509.)

The Supreme Court later explained its *Jenkins* holding: "We have held that the *Williamson* preemption rule is applicable (1) when each element of the general statute corresponds to an element on the face of the special statute,

or (2) when it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 502 . . . .)" (*People* v. *Watson* (1981) 30 Cal.3d 290, 295-296 [179 Cal.Rptr. 43, 637 P.2d 279].) *Watson* concluded that the general murder statute was not preempted by the more specific vehicular homicide statute. (*Id.* at pp. 295-299.)

More recently, the Supreme Court expanded its explanation of *Jenkins*: ". . . *People* v. *Gilbert, supra,* 1 Cal.3d 475, 479-481, and *People* v. *Jenkins, supra,* 28 Cal.3d 494, 501-505 . . . merely stand for the proposition that when the Legislature has enacted a specific statute addressing a specific matter, and has prescribed a sanction therefor, the People may not prosecute under a general statute that covers the same conduct, *but which prescribes a more severe penalty,* unless a legislative intent to permit such alternative prosecution clearly appears. [Citation.]" (*Mitchell* v. *Superior Court* (1989) 49 Cal.3d 1230, 1250 [265 Cal.Rptr. 144, 783 P.2d 731].) In a footnote, *Mitchell* then quoted approvingly from *People* v. *Woods* (1986) 177 Cal.App.3d 327, 333-334 [222 Cal.Rptr. 868], written by Justice Ashby of Division Five of this court, *Barrowclough*'s author, analyzing *Jenkins* and its predecessors: " 'Typically the issue whether a special criminal statute supplants a more general criminal statute arises where the special statute is a misdemeanor and the prosecution has charged a felony under the general statute instead. [Citations.] Such prosecutions raise a genuine issue whether the defendant is being subjected to a greater punishment than specified by the Legislature, and the basic question for the court to determine is whether the Legislature intended that the more serious felony provisions would remain available in appropriate cases.' [Citation.]" (*Mitchell* v. *Superior Court, supra,* 49 Cal.3d at p. 1250, fn. 14.)[6]

This lengthy analysis of *Jenkins* and its progeny discloses that *Barrowclough*'s and *Jensen*'s conclusion that Vehicle Code section 20 does not preclude perjury prosecutions for those filing false license applications under oath with DMV remains valid. First, *Jenkins* did not change the previous rule as much as expand it. While *Jenkins* did disapprove the *Ruster* language, taken from *Barrowclough* and other cases, that "a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute" (*People* v. *Ruster, supra,* 16 Cal.3d at p. 694), that factor remains part of the analysis of conflicting penal statutes. *Barrowclough* and *Jensen* did not reach their conclusion merely by applying the disapproved language, but by reviewing legislative intent. As discussed in

---

[6]Although *Woods* did not mention *Barrowclough*, we think it unlikely Justice Ashby would have ignored an opportunity to correct himself during *Woods*'s lengthy discussion of this issue if he believed *Jenkins* had overruled *Barrowclough*.

*Shoemaker,* the two earlier cases essentially applied the *Jenkins* analysis in reaching their still valid conclusion that, on these facts, Molina could be prosecuted for perjury, because the two statutes did not cover the same subject matter, and because the Legislature clearly intended that those submitting false license applications under oath to DMV be prosecuted for perjury. Thus, *Jenkins* did not undermine *Barrowclough*'s and *Jensen*'s validity.

Second, *Jenkins* may be interpreted as requiring only that courts determine whether the Legislature intended the special statute to preclude prosecution for the more severe general statute. If not, violators may be prosecuted under the general statute. As discussed in *Barrowclough* and *Jensen,* the Legislature clearly intended that those who file false license applications under oath be prosecuted for perjury. The Legislature mandated that license applications, unlike other documents filed with DMV, be filed under oath. Thus, on these facts, Molina may be prosecuted for perjury.

Even if *Jenkins* requires a mechanistic application of its three-step analysis, *Barrowclough* and *Jensen* remain valid. First, Vehicle Code section 20 does not contain all the elements of section 118, subdivision (a). Thus, as discussed in *Shoemaker,* the two statutes do not address the same subject matter and do not conflict. Second, unlike the situation in *Jenkins,* where one could not violate the AFDC fraud statute without committing perjury, one easily can violate Vehicle Code section 20 without committing perjury by filing documents with DMV which need not be under oath. Third, as discussed above, the Legislature clearly intended that those filing false license applications with DMV be prosecuted for perjury. *Barrowclough* and *Jensen* correctly applied the *Jenkins* test and remain valid. (See *People* v. *Robertson* (1990) 223 Cal.App.3d 1277, 1280-1282 [273 Cal.Rptr. 209].)

Thus, the trial court correctly concluded that Molina may be prosecuted for perjury, and need not be prosecuted under Vehicle Code section 20.

## II

Molina's contention that Vehicle Code section 14610, subdivision (a)(1) requires that a fraudulently obtained license be possessed for a fraudulent purpose, is equally meritless. ■ In interpreting a statute, "[o]ur analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the words themselves. [Citations.] If the statutory language is clear and unambiguous, there is no need for construction. [Citations.]" *(Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 606

[257 Cal.Rptr. 320, 770 P.2d 732]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

■ Nothing in Vehicle Code section 14610, subdivision (a)(1) requires or suggests that the fraudulently altered or fraudulently obtained license whose possession is proscribed must be possessed for a later fraudulent purpose. The fraud proscribed by the statute involves fraudulent altering or fraudulent obtaining of the license, not the possessor's intent to use the license to commit fraud later. The trial court properly rejected Molina's specious claim that the statute can be violated only if the fraudulently possessed license also is possessed for some later fraudulent purpose. Since no such intent need be shown, the trial court's finding that Molina violated his probation by violating Vehicle Code section 14610, subdivision (a)(1) is adequately supported by the evidence.

### DISPOSITION

We affirm the judgments (orders granting probation and finding Molina in violation of probation).

Devich, Acting P. J., and Vogel, J., concurred.

A petition for a rehearing was denied May 5, 1992, and appellant's petition for review by the Supreme Court was denied July 8, 1992.