180 Cal.App.4th 905 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
MELISSA KAY MURPHY, Defendant and Appellant.
No. E046742.
Court of Appeals of California, Fourth District, Division Two.
December 28, 2009.
*908 Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Meredith A. Strong, Deputy Attorneys General, for Plaintiff and Respondent.

*909 OPINION
MILLER, J.
A jury convicted defendant Melissa Kay Murphy of procuring or offering false information for filing (count 1Pen. Code, § 115, subd. (a)), insurance fraud (false claim) (count 2Pen. Code, § 550, subd. (a)(4)), and insurance fraud (false statement) (Pen. Code, § 550, subd. (b)(1)). The court granted defendant three years of formal probation on various terms and conditions including service of a 180-day jail term. On appeal, defendant contends she was improperly convicted of the felony offense of procuring or offering false information for filing in count 1 because that offense was preempted by more specific recently enacted misdemeanor offenses. In addition, defendant maintains that the trial court erred in failing to give a sua sponte jury instruction in connection with count 2 that the jury was required to find defendant was not entitled to receive payment for the loss she made a claim for. We affirm the judgment in full.

FACTUAL AND PROCEDURAL HISTORY
San Bernardino Deputy Sheriff Jay Staviski was on patrol in the mountainous region of San Bernardino County on March 5, 2006, when, at 2:47 a.m., he came across a gold 2001 Chevrolet Malibu on Highway 18 that was "smashed into the side of the hill." The vehicle had sustained extensive damage, with both airbags deployed. Deputy Staviski checked the car and surrounding area to see if anyone was hurt, but could not find anyone. There was no key in the ignition. Deputy Staviski provided dispatch with the license plate number on the vehicle and dispatch provided him with the name and address of the registered owner of the car. Deputy Staviski drove to the address provided.
Defendant, the registered owner of the vehicle, answered the door. Upon contact, defendant had a phone in her hand, and reported to Deputy Staviski that she had been attempting to obtain the number for the California Highway Patrol (CHP) in order to report her vehicle as stolen. Defendant had blood on her face, a small laceration on her nose, and blood on her right hand. Defendant informed Deputy Staviski that she had injured herself at work. Deputy Staviski drove defendant and her mother to the vehicle.
Defendant informed Deputy Staviski that she had met a friend at a bar in Running Springs around 11:00 p.m. the preceding evening. They left the bar around 2:00 a.m. and found the vehicle missing. Defendant reported that she attempted to go back into the bar to call the CHP to report the vehicle as stolen; however, the bar was already closed. Defendant's cell phone had a *910 low battery and poor reception, so she was also unable to report the vehicle stolen using her cell phone. Defendant and her friend left the bar for defendant's residence and, on the way, discovered her vehicle on the side of the road; however, they did not stop, but continued on. Defendant reported that all her vehicle keys were accounted for.
Deputy Staviski took a stolen vehicle report from defendant on CHP form No. 180. After filling out and filing the form, the data contained therein was entered into a nationwide stolen vehicle system, which allowed law enforcement across the country to run a vehicle's license plate number or vehicle identification number (VIN) to determine whether a vehicle had been stolen. After Deputy Staviski completed the form, defendant signed it under penalty of perjury.
Deputy Staviski noticed a few things regarding the vehicle and defendant's story which "struck [him] as odd." Deputy Staviski noted "that the driver's seat was moved all the way forward, which would indicate somebody small was driving the vehicle." Defendant appeared to be five feet one inch tall and 120 pounds. The ashtray of the vehicle was open and in plain view. It contained cash including a $10 bill and other denominations, which Deputy Staviski believed was strange because "if somebody is going to take the time to steal a car, they're going to steal the cash that's in view." Deputy Staviski noted that there was no damage to the ignition or loose wires beneath the dashboard. In many recovered stolen vehicles, the ignition has been "punched," i.e., "some foreign object [has been used] to punch the ignition out, remove a section of it so [the thief] can stick some form of object in there to start the vehicle." A CHP station was located on Highway 18 between the bar and defendant's home; defendant had not stopped at that station to report the vehicle as stolen on her way home.
Defendant informed Deputy Staviski that she had imbibed alcohol while at the bar; however, she did not exhibit any objective symptoms of intoxication. He did not perform any field sobriety tests, chemical tests, or investigate the accident as the result of driving under the influence.
Defendant's friend, Lisa Barbato, testified that she called defendant from a pay phone on the night of March 4, 2006, and they agreed to meet at the Fireside Inn Bar in Running Springs. Barbato arrived sometime between 11:00 p.m. and midnight; defendant arrived 15 to 20 minutes thereafter. They drank, played pool and danced. Defendant drank one or two beers while Barbato drank a couple of beers. Defendant left the bar first. She reentered the bar and informed Barbato that she could not find her car. Defendant asked Barbato for a ride home. Defendant did not call the police from the bar. They *911 left the bar together sometime after 2:00 a.m. The door behind them locked so that they could not get back in to call the police.
Barbato drove defendant home. They did not stop at the CHP station, which was located between the bar and defendant's home, because Barbato did not think about it. On the way they came across defendant's vehicle. They pulled over and spent between four and five minutes looking through it. Barbato's cell phone was not working so they could not call the police at that time. They left the site to head straight for defendant's house. When they arrived, defendant appeared to call the CHP.
The responding officer, Deputy Collins, interviewed Barbato and she related a story substantially identical to that to which she testified. Barbato was later interviewed by district attorney investigators to whom she again related the same version of events. Investigator Smith informed Barbato he had a videotape of Barbato and defendant getting into defendant's car. He showed her the videotape, but refused to play it for her because he said it needed to be enhanced. Barbato testified that she continued to relate the same version of events at least 10 times. Barbato informed Smith that she had to go to work. Smith offered her a ride; however, since she was a delivery driver, she needed her vehicle and declined the offer. Smith informed Barbato that she could not leave until they were done questioning her. He informed her that they had retrieved her fingerprints from defendant's vehicle. She asked if she could call her work. They told her she could not. They blocked her path when she attempted to leave.
Barbato testified that when she was already half an hour late to work, she agreed they could write down whatever version of events they wanted her to say. She then relayed a different version in response to questions posed by the investigators. The resultant statements contained in Investigator Smith's report alleged that she reported that defendant drove the car, crashed it, and that it was not stolen. Those statements were not the truth.
Investigator Smith testified that when he initially interviewed Barbato she gave a version of events consistent with her testimony and that which she had reported to Deputy Collins. However, after Smith explained the evidence in the case, Barbato changed her story. She relayed that, around closing time, she observed defendant in her car arguing with a man. The man exited the car; defendant drove off, upset, at around 70 miles an hour. Barbato followed. The roads were wet and icy. She came around a corner and found defendant had crashed. Defendant incurred a cut to her hand and had blood smeared on her face. Barbato told defendant to go home and report the accident the next morning so that she would not face a DUI charge. Smith testified that he *912 never told Barbato she could not leave nor prevented her from leaving during questioning.
On the day of the accident, defendant held a policy with Western General Insurance covering her vehicle. She made a claim on that policy regarding the accident. The vehicle was reported as "a total theft recovered." A recorded statement was taken from defendant on March 9, 2006. In that statement, defendant reported that her car was stolen. She alleged that she came out of the bar and found that her car was missing, but she could not get back into the bar to report it missing. On the way home, she and her friend found the vehicle on the side of the road. They pulled over, checked it out, and left. She reported that her keys were missing and she never found them. She ended the recording by affirming under penalty of perjury that all her statements were true.

DISCUSSION

A. Preemption

Defendant contends the Legislature enacted misdemeanor statutes, which more specifically defined the felony offense for which she was convicted in count 1, subsequent to the latter's enactment; thus, she asserts her felony conviction is preempted and must be reversed. Defendant specifically notes that Vehicle Code section 20, Vehicle Code section 31, and Vehicle Code section 10501 are all more specific statutes delineating her offense, which preempt her conviction under Penal Code section 115.[1]
(1) "The preemption doctrine provides that a prosecution under a general criminal statute with a greater punishment is prohibited if the Legislature enacted a specific statute covering the same conduct and intended that the specific statute would apply exclusively to the charged conduct. [Citations.] To determine the applicability of this doctrine in a particular case, the courts have developed two alternative tests. Under these tests, a prosecution under the general statute is prohibited if: (1) `each element of the general statute *913 corresponds to an element on the face of the [specific] statute'; or (2) `it appears from the statutory context that a violation of the [specific] statute will necessarily or commonly result in a violation of the general statute.' [Citations.]" (People v. Jones (2003) 108 Cal.App.4th 455, 463 [133 Cal.Rptr.2d 358].)
"Consideration must be given to the entire context surrounding the `special' statute to determine the true overlap of the statutes and to ascertain the intent of the Legislature." (People v. Jenkins (1980) 28 Cal.3d 494, 503 [170 Cal.Rptr. 1, 620 P.2d 587].) "The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and `requires us to give effect to the special provision alone in the face of the dual applicability of the general provision. . . and the special provision . . . .' [Citation.]" (Id. at pp. 505-506.)

1. Vehicle Code Section 20

(2) Penal Code section 115, subdivision (a), provides that "[e]very person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony." To prove that a defendant is guilty under Penal Code section 115, the People must prove, "1. The defendant caused a false document to be filed in a public office in California; [¶] 2. When the defendant did that act, she knew that the document was false; [¶] AND [¶] 3. The document was one that, if genuine, could be legally filed." (CALCRIM No. 1945.) Vehicle Code Section 20 provides that "[i]t is unlawful to use a false or fictitious name, or to knowingly make any false statement or knowingly conceal any material fact in any document filed with the Department of Motor Vehicles or the [CHP]." (3) As of this time, there is no jury instruction or published case defining the elements of Vehicle Code section 20; however, merely by resort to the statute itself, it is readily apparent that those elements would include proof that (1) the defendant made a false statement or concealed a material fact; (2) did so knowingly; and (3) the statement was included in a document that was filed with the Department of Motor Vehicles (DMV) or the CHP.
(4) The elements of Penal Code section 115 and Vehicle Code section 20 do not correspond. (People v. Jones, supra, 108 Cal.App.4th at p. 463; see also People v. Powers (2004) 117 Cal.App.4th 291, 298-299 [11 Cal.Rptr.3d *914 619].) First, Penal Code section 115 is primarily concerned with the filing of a false or fraudulent instrument. On the other hand, Vehicle Code section 20 chiefly deals with the making of false statements that are included in a document. Thus, a prosecution under Vehicle Code section 20 could involve a document that would not be considered per se false even while containing false statements therein. Second, regarding the concealment of facts, Vehicle Code section 20 requires that the omitted or obfuscated subject matter be material, whereas Penal Code section 115 has no corresponding materiality requirement. (See People v. Feinberg (1997) 51 Cal.App.4th 1566, 1578-1579 [60 Cal.Rptr.2d 323].) Third, Penal Code section 115 requires that the instrument be "procured" or "offered" for filing; thus, the offense can be completed at the moment a defendant offers the document for filing with knowledge of its falsity. (People v. Garfield (1985) 40 Cal.3d 192, 195 [219 Cal.Rptr. 196, 707 P.2d 258].) However, Vehicle Code section 20 requires that the document containing the false statement be "filed." Fourth and finally, Penal Code section 115 requires that the instrument be submitted for filing with any public office, but Vehicle Code section 20 specifically delineates that the document must be filed with the DMV or CHP.
(5) Likewise, a violation of Vehicle Code section 20 will not necessarily, or even commonly, result in a violation of Penal Code section 115. "Vehicle Code section 20 merely renders it unlawful to use a false or fictitious name or to knowingly make a false statement or knowingly conceal any material fact in any document filed with [DMV]. Numerous documents are filed with [DMV] . . . ." (People v. Molina (1992) 5 Cal.App.4th 221, 226 [6 Cal.Rptr.2d 736].) Penal Code section 115 requires that the instrument itself be false or forged, not merely that it contain false or fictitious information. Thus, a prosecution under Vehicle Code section 20 will most commonly involve fictitious or false information included on a nonetheless valid document. (See Molina, at pp. 226-232 [conviction under Pen. Code, § 118 for perjury for filing of fraudulent license application not precluded by Veh. Code, § 20 because unlike other documents, license application was required to be signed under penalty of perjury].)
Here, defendant procured or offered the fraudulent CHP form No. 180 for filing by the deputy; she did not file the document herself. Thus, defendant's offense arguably involved more egregious conduct because it necessarily involved another individual. Moreover, the whole purpose for filing of the CHP form No. 180 was to report a stolen vehicle; hence, the instrument itself was entirely fraudulent, rather than a valid document that merely contained false statements: "`The core purpose of Penal Code section 115 is to protect the integrity and reliability of public records.' [Citations.]" (People v. *915 Feinberg, supra, 51 Cal.App.4th at p. 1579.) Furthermore, the CHP No. 180 form was not filed with the CHP or the DMV; rather, it was taken by a deputy who entered it in "[their] records." Thus, defendant's conviction under Penal Code section 115 was not preempted by Vehicle Code section 20.

2. Vehicle Code Section 10501

(6) Defendant additionally contends her felony conviction under Penal Code section 115 was preempted by Vehicle Code Section 10501, subdivision (a), a misdemeanor. That section provides: "It is unlawful for any person to make or file a false or fraudulent report of theft of a vehicle required to be registered under this code with any law enforcement agency with [the] intent to deceive." Like Vehicle Code section 20, no jury instruction or case law enumerates the elements of Vehicle Code section 10501; however, again, merely by resort to the statute itself, the elements would be as follows: (1) the defendant made a false report of the theft of her vehicle; (2) she did so with the intent to deceive; and (3) the report was made to any law enforcement agency.
(7) Here, again, the elements of Penal Code section 115 and Vehicle Code section 10501, subdivision (a), do not correspond. (People v. Jones, supra, 108 Cal.App.4th at p. 463; see also People v. Powers, supra, 117 Cal.App.4th at pp. 298-299.) As the People note, Vehicle Code section 10501's lack of a "requirement that the false report, if genuine, could have been legally filed" provides a legally decisive distinction reflecting the Legislature's intent, pursuant to Penal Code section 115, to protect recordation of documents in public institutions and the public's reliance upon them, a concern not apparent in Vehicle Code section 10501. Additionally, as noted above in the discussion of Vehicle Code section 20, Penal Code section 115's prohibition on knowingly procuring or offering false instruments to be filed is legally distinct from Vehicle Code section 10501's prohibition on making false statements or actually filing a false report of vehicle theft. This is because an offense under Penal Code section 115 is more egregious because it inherently induces the conduct and reliance of others in its commission. Moreover, unlike Vehicle Code section 10501, Penal Code section 115 "does not require that the act must be done with the intent to defraud another, nor is there any provision therein requiring that anyone be defrauded thereby. . . . The crime of violating section 115 of the Penal Code is sufficiently proven when it is shown that the accused intentionally committed the forbidden act." (People v. Geibel (1949) 93 Cal.App.2d 147, 168-169 [208 P.2d 743].) Similarly, a violation of Vehicle Code section 10501 will not necessarily, or even commonly, result in a violation of Penal Code section 115 because the former *916 is concerned with the filing of the false or fraudulent report by the reporter himself or herself; thus, it lacks the more morally turpitudinous act of inducing behavior by another. Therefore, defendant's conviction under Penal Code section 115 was not preempted by Vehicle Code section 10501.
(8) As the People note, "`there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. [Citations.]' . . ." (People v. Valladares (2009) 173 Cal.App.4th 1388, 1394 [93 Cal.Rptr.3d 822].) We have reviewed the summary digest sections of Statutes and Amendments to the Code, and find no legislative intent that either Vehicle Code sections 20 or 10501 should supersede Penal Code section 115 under circumstances such as those present in this case. (9) Likewise, as discussed above, both Vehicle Code statutes can operate concurrently with Penal Code section 115. Therefore, defendant's conviction under the latter must stand.

B. Jury Instruction on Count 2

Defendant contends the court erred in failing to give a sua sponte jury instruction on count 2 to help the jury determine whether she made a false or fraudulent claim for payment, i.e., an insurance claim to which she knew she was not entitled. She argues she was entitled to payment under the insurance policy regardless of whether she or a thief was driving; therefore, she was forbidden from claiming payment only if she was unlawfully driving under the influence at the time of collision. Thus, she asserts the jury should have been instructed on the elements for finding a person was driving under the influence. We disagree.
The jury was given the standard jury instruction on Insurance Fraud (Fraudulent Claims) (Pen. Code, § 550, subd. (a)(4)) as set forth in CALCRIM No. 2000: "The defendant is charged in Count Two with insurance fraud committed by fraudulent claim. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant falsely or fraudulently claimed payment for a loss due to theft of a motor vehicle; [¶] 2. The defendant knew that the claim was false or fraudulent; [¶] AND [¶] 3. When the defendant did that act, she intended to defraud. Someone intends to defraud if he or she intends to deceive another person either to cause a loss of money, or to cause damage to, a legal, financial, or property right. [¶] For the purpose of this instruction, a person includes a corporation. [¶] A person claims, makes, or presents a claim for payment by requesting payment under a contract of insurance for a loss."
*917 Defendant never requested her now proposed instruction below; however, this did not forfeit her contention on appeal. Penal Code section 1259 permits a reviewing court to review any jury instruction given, refused, or modified even though no objection was made if substantial rights are affected. Defendant does not contend that CALCRIM No. 2000 is an incorrect statement of the law.
Defendant claims that she was entitled to receive payment on her insurance claim, despite her fraudulent statements made therein, so long as the jury did not find that she was under the influence of alcohol while she was driving the vehicle. The People contend that another provision of defendant's insurance policy providing that "[t]he company will not provide coverage under this policy to any person who has knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim," invalidated defendant's claim because she falsely reported that the vehicle had been stolen. Thus, the jury's determination of whether she was intoxicated at the time of the collision was irrelevant to her conviction under count 2. We agree.
Defendant contends that a claim not paid under the misrepresentation clause cited above is not paid because the insured made a false statement in that claim, not because the insured filed a false claim. Thus, she asserts that the People are ignoring the distinction between making a false claim for payment and a false statement in support of a claim, both being separate offenses for which she was convicted in this case. However, the exclusionary provision of the insurance policy at issue requires that the insured make a misrepresentation regarding a "material fact or circumstance"; thus, an insured could be convicted under Penal Code section 550, subdivision (b)(1), for making a false statement in connection with an insurance claim which was not "material" and still have a valid claim. On the other hand, here, where defendant's fraudulent statements bore on the material facts and circumstances regarding the claim, her filing of the claim was invalid. Thus, convictions would be proper in both counts because defendant made false statements in connection with an insurance claim and made material misrepresentations regarding the facts of that claim such that her claim was invalid. Moreover, even if we agreed with defendant's interpretation of the requisite findings for a conviction on count 2, we find that her contention is subsumed within the elements as presented in the instructions as given. CALCRIM No. 2000 more than adequately conveyed to the jury that it was required to find that defendant made a fraudulent insurance claim, payment of which she was not entitled to receive.

*918 DISPOSITION
The judgment is affirmed.
McKinster, Acting P. J., and Richli, J., concurred.
NOTES
[1] Only in her reply brief does defendant assert that Vehicle Code section 31, an infraction, is a more specific statute defining her offense; thus, she alleges it would preempt her felony conviction under Penal Code section 115. An appellate court will ordinarily not address an issue raised for the first time in an appellant's reply brief because to do so would deprive the respondent of the opportunity to address the issue in its briefing. (REO Broadcasting Consultants v. Martin (1999) 69 Cal.App.4th 489, 500 [81 Cal.Rptr.2d 639]; Tilton v. Reclamation Dist. No. 800 (2006) 142 Cal.App.4th 848, 864, fn. 12 [48 Cal.Rptr.3d 366].) Accordingly, we deem review of the issue as it relates to Vehicle Code section 31 forfeited.