[No. G039799. Fourth Dist., Div. Three. May 15, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGEL VICENTE VALLADARES, Defendant and Appellant.

COUNSEL

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

O'LEARY, J.—Angel Vicente Valladares appeals from a judgment after a jury convicted him of the manufacture, distribution, and sale of false immigration documents. He argues (1) Penal Code section 113,[1] the statute he was convicted of violating, was repealed by implication by section 112; (2) the trial court erroneously failed to instruct the jury on the lesser included offense of section 112; (3) insufficient evidence supports his conviction; (4) his conviction violates the equal protection clause; and (5) the prosecutor committed misconduct during rebuttal argument. None of his contentions has merit, and we affirm the judgment.

FACTS

Investigator Tanya Hauge was investigating a false document operation in Santa Ana when she learned she could obtain counterfeit documents at a nearby shopping center. Hauge and another undercover officer drove in an unmarked van to the shopping center where they saw Valladares talking with a group of people. Hauge's and Valladares's eyes met, and Hauge mouthed the word, "MICA," a term Hispanics use to refer to legal permanent resident cards. Valladares approached and, in Spanish, asked Hauge what she needed. She responded an identification card and Social Security card. When Valladares asked her what type of card she wanted, Hauge replied, "laser," the newer type of card. He quoted her a price of $110 for the two cards, but they agreed on $100. He asked her if she had a photograph, and when she said no, he suggested they go to a nearby studio; Valladares led the way. The photographer took pictures of Hauge, handed them to Valladares, and Hauge

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

paid the photographer $6. Valladares asked Hauge for her name, birthday, and country of origin, and on a piece of paper, she wrote, "Nora Gaston Santos[,] . . . 11-30-60[,] . . . Philippines." The name and birthday were invented. When Valladares asked Hauge for her Social Security number, Hauge said she did not have one and asked if he could create one. Valladares told her the documents would be ready in one hour and to meet at the same place. He gave her a piece of paper with his name and telephone number.

A little later, Hauge called Valladares and told him she saw police where they were supposed to meet and they agreed to meet at another location. When they met, Valladares handed Hauge an envelope marked "Nora." Inside the envelope were the identification card, Social Security card, the photographs, and the piece of paper with Hauge's information. The cards had Hauge's invented information, and the identification card had a fingerprint that was not Hauge's. When Hauge said the documents looked good, Valladares said they were created with computers. Hauge paid Valladares with a premarked $100 bill, and Valladares jokingly asked if it was real. Hauge said it was, and he left. Shortly thereafter, an officer stopped Valladares's vehicle and found the premarked $100 bill.

An information charged Valladares with the manufacture, distribution, and sale of false documents (immigration documents) (§ 113) (count 1), and two counts of forgery of an official seal (§ 472) (counts 2 & 3). Before trial, on the prosecutor's motion, the trial court dismissed counts 2 and 3. At the close of the prosecutor's case-in-chief, defense counsel moved for acquittal pursuant to section 1118.1. The trial court denied the motion. The jury convicted Valladares of count 1. The trial court sentenced Valladares to prison for five years.

DISCUSSION

### I. Section 113

Valladares argues his conviction for violating section 113 must be reversed because section 112 implicitly repealed section 113. We disagree.

In 1994, the California Legislature enacted *misdemeanor* section 113 during an extraordinary session. During the same month, California voters passed Proposition 187, which created *felony* section 113. In *People v. Bustamante* (1997) 57 Cal.App.4th 693, 698 [67 Cal.Rptr.2d 295] (*Bustamante*), the court stated: "We hold that the provisions of misdemeanor section 113 are inconsistent with those of felony section 113, and are not amenable to any reasonable harmonization that is in keeping with the intent of the voters. We further hold that under recognized principles of statutory

construction the later enactment of felony section 113 operates as a repeal, albeit by implication, of misdemeanor section 113."

In 2001, the California Legislature amended and renumbered section 113 to section 112. Section 112 states: "(a) Any person who manufactures or sells any *false government document* with the intent to conceal the true citizenship or resident alien status of another person is guilty of a *misdemeanor* and shall be punished by imprisonment in a county jail for one year. Every false government document that is manufactured or sold in violation of this section may be charged and prosecuted as a separate and distinct violation, and consecutive sentences may be imposed for each violation. [¶] (b) A prosecuting attorney shall have discretion to charge a defendant with a violation of this section or any other law that applies. [¶] (c) As used in this section, 'government document' means any document issued by the United States government or any state or local government, including, but not limited to, any passport, immigration visa, employment authorization card, birth certificate, driver's license, identification card, or social security card." (Italics added.)

Section 113 provides: "Any person who manufactures, distributes or sells *false documents* to conceal the true citizenship or resident alien status of another person is guilty of a *felony*, and shall be punished by imprisonment in the state prison for five years or by a fine of seventy-five thousand dollars ($75,000)." (Italics added.)

Relying on *Bustamante, supra*, 57 Cal.App.4th 693, Valladares argues that in 2001, when the California Legislature enacted section 112, it implicitly repealed section 113. He goes further, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], and claims because of the California Supreme Court's decision in *Bustamante*, we have "little choice but to find repeal by implication of . . . section 113."[2] Valladares is correct we are bound by California Supreme Court opinions, but *Bustamante* is a Court of Appeal case—it is not a Supreme Court case, and we are not bound by it. (*Fire Ins. Exchange v. Abbott* (1988) 204 Cal.App.3d 1012, 1023 [251 Cal.Rptr. 620].) Further, *Bustamante* is distinguishable.

In *Bustamante, supra*, 57 Cal.App.4th at page 699, the court explained: " 'For purposes of statutory construction, the various pertinent sections of all the codes must be read together and harmonized if possible.' [Citations.] However, . . . [citation] . . . '[w]hen a later statute supersedes or

---

[2] Valladares asserts *Bustamante* is a Supreme Court case in his reply brief. He correctly states it is a Court of Appeal case in his opening brief.

substantially modifies an earlier law but *without expressly referring to it*, the earlier law is repealed or partially repealed by implication. The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. [Citations.] Thus there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. [Citations.]' . . ."

■ Remembering statutes must be read together and harmonized if possible, section 112 does not supersede or substantially modify section 113. Section 112 makes it a misdemeanor to "manufacture[] or sell[] any *false government document* with the intent to conceal the true citizenship or resident alien status of another person." Section 113 makes it a felony to "manufacture[], distribute[][,] or sell[] *false documents* to conceal the true citizenship or resident alien status of another person." Although one whose conduct falls within section 112 would also fall within section 113, we presume the California Legislature was aware of *Bustamante* and section 113 when it amended and renumbered section 112. Indeed, section 112's legislative history states the bill's purpose was to "make numerous, nonsubstantive changes to clarify and update" existing criminal laws. (Legis. Counsel's Dig., Sen. Bill No. 205 (2001–2002 Reg. Sess.) as chaptered Oct. 13, 2001; see Stats. 2001, ch. 854, § 19.)[3] And, section 112's language is identical to the California Legislature's previous misdemeanor section 113's language. Finally, section 112, subdivision (b), provides, "A prosecuting attorney shall have discretion to charge a defendant with a violation of this section or any other law that applies." We interpret this portion of section 112 as an expression of the California Legislature's desire to give prosecutors the discretion to charge a person with either a *misdemeanor* or a *felony* depending on the circumstances of the case.

■ As to Valladares's reliance on *Bustamante*, it is misplaced. The *Bustamante* court dealt with two statutes with the same section number. Here, we have sections 112 and 113, which as we explained above, can be harmonized. Because there is a presumption against repeal by implication and the statutes are compatible, we conclude section 112 did not repeal by implication section 113.

---

[3] We grant the Attorney General's motion to take judicial notice of section 113's legislative history. (*In re S.B.* (2004) 32 Cal.4th 1287, 1296, fn. 3 [13 Cal.Rptr.3d 786, 90 P.3d 746]; Evid. Code, § 452, subd. (c).)

## II. *Lesser Included Offense Instruction*

Valladares contends the trial court erroneously refused his request to instruct the jury with the lesser *included* offense of section 112. Not so.

■ Trial courts must instruct on lesser necessarily included offenses if there is substantial evidence the defendant is guilty only of the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 117–118 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) "Like most jurisdictions, California recognizes that an offense expressly alleged in an accusatory pleading may necessarily include one or more lesser offenses. . . . Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*Ibid.*) We independently review the trial court's ruling. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218 [17 Cal.Rptr.3d 532, 95 P.3d 811].)

Section 113 provides: "Any person who manufactures, distributes or sells false documents to conceal the true citizenship or resident alien status of another person is guilty of a felony, and shall be punished by imprisonment in the state prison for five years or by a fine of seventy-five thousand dollars ($75,000)."

Section 112 states: "(a) Any person who manufactures or sells any false government document with the intent to conceal the true citizenship or resident alien status of another person is guilty of a misdemeanor and shall be punished by imprisonment in a county jail for one year. Every false government document that is manufactured or sold in violation of this section may be charged and prosecuted as a separate and distinct violation, and consecutive sentences may be imposed for each violation. [¶] (b) A prosecuting attorney shall have discretion to charge a defendant with a violation of this section or any other law that applies. [¶] (c) As used in this section, 'government document' means any document issued by the United States government or any state or local government, including, but not limited to, any passport, immigration visa, employment authorization card, birth certificate, driver's license, identification card, or social security card."

In rejecting Valladares's request to instruct the jury on section 112, the trial court explained section 112 was not a lesser included offense of section 113 because the offenses are essentially identical. The court stated the only meaningful difference was their penalties, and the prosecutor, as part of the executive branch, had the discretion to choose which crime to prosecute. The court said it was concerned that if it did instruct the jury on section 112,

the jury would also discern the similarities between the two statutes, and the trial court would have to explain the difference was the penalty, a matter not within the jury's province. The court concluded that although section 112 might be a lesser related offense of section 113, the court was not required to instruct the jury on lesser related offenses.

The trial court was correct—section 112 is not a lesser included offense of section 113. It is essentially the same offense, with a different penalty, and the prosecutor had wide discretion concerning which crime to charge. (*People v. Cortes* (1999) 71 Cal.App.4th 62, 79 [83 Cal.Rptr.2d 519].) Therefore, the trial court properly refused Valladares's request to instruct the jury on section 112 because it is not a lesser included offense of section 113. Additionally, the trial court did instruct the jury with Judicial Council of California Criminal Jury Instructions (2008) CALCRIM No. 1926, "Possession of Counterfeit Government . . . Seal," a lesser included offense (§ 472).

## III. *Sufficiency of the Evidence*

Valladares claims insufficient evidence supports his conviction for the manufacture, distribution, and sale of false immigration documents. Again, we disagree.

" ' "To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' [Citations.] ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citation.] The standard of review is the same when the prosecution relies mainly on circumstantial evidence. [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 104 [8 Cal.Rptr.3d 271, 82 P.3d 296].)

■ Section 113's two elements are: "(1) the manufacture, distribution or sale of 'false documents'; and (2) the intent 'to conceal the true citizenship or resident alien status of another person.' " (*People v. Rizo* (2000) 22 Cal.4th 681, 686 [94 Cal.Rptr.2d 375, 996 P.2d 27].) "[T]he criminality of this act does not have to depend on the existence of an identifiable beneficiary or the unlawful act, intent or status of that beneficiary." (*Id.* at p. 688.)

Valladares concedes there was evidence supporting the first element, but claims there was insufficient evidence he had the requisite intent. Not so.

■ Based on the entire record, we conclude there was sufficient evidence Valladares possessed the specific intent to conceal the true citizenship or

resident alien status of Hauge. Hauge saw Valladares at an area where she learned one could obtain counterfeit documents. When their eyes met, Hauge mouthed the word, "MICA," and Valladares expressed his willingness to assist Hauge with her document needs by asking what she needed. When Hauge replied she needed identification and Social Security cards, Valladares demonstrated his expertise in government-issued personal identification cards by asking what type of card she wanted. After they agreed on a price, Valladares led Hauge to a nearby location where he apparently took all his customers who needed photographs and asked Hauge for her personal information. When he asked Hauge for her Social Security number, she asked Valladares to create one. After producing the documents, Hauge paid Valladares with a premarked $100 bill. He jokingly asked if it was real, due to his recent production of forged documents. Based on Valladares's presence at the location of a suspected counterfeit document operation, his knowledge of government-issued documents, the speed and coordination of the operation, his willingness to falsify a Social Security number, and his attempt at humor by inquiring whether Hauge was buying counterfeit documents with counterfeit money, there was sufficient evidence Valladares had the specific intent to conceal Hauge's true citizenship or resident alien status.

Valladares claims there was a lack of evidence Hauge told him she intended to conceal her identity, he knew she invented the name, or he was connected to the false document operation at the school. This ignores the above evidence that does establish Valladares possessed the required specific intent. Valladares's assertion he "might have believed" Hauge lost her valid documents and sought replacements belies the record, as there was no evidence he was shocked when she asked him to create a Social Security number for her. One does not create a new Social Security number to replace an existing card. Finally, Valladares's suggestion his act of selling the false documents operated as a conclusive presumption of his intent is meritless. There was sufficient evidence supporting a finding of specific intent, and the trial court did not instruct the jury on any conclusive presumption. Therefore, there was sufficient evidence to support Valladares's conviction on count 1.

IV. *Equal Protection*

Valladares argues his federal and state equal protection rights were violated because he was prosecuted for violating felony section 113 instead of misdemeanor section 112. Specifically, he claims his equal protection rights were violated because he was prosecuted for a felony when a similarly situated person could be prosecuted for a misdemeanor for the same conduct. His claim is meritless.

Both the state and federal Constitutions provide that no person shall be deprived of equal protection of the laws. (U.S. Const., 14th Amend.; Cal.

Const., art. I, § 7, subd. (a).) A person claiming a violation of this provision must show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 105 S.Ct. 3249].) The threshold question in any equal protection case is whether the groups are *similarly situated* for purposes of the law being challenged. (*In re Lemanuel C.* (2007) 41 Cal.4th 33, 47 [58 Cal.Rptr.3d 597, 158 P.3d 148].)

The prosecutor's decision how to prosecute a crime does not violate the equal protection clause. (*People v. Williams* (1997) 16 Cal.4th 153, 278 [66 Cal.Rptr.2d 123, 940 P.2d 710] [prosecutor has complete discretion whether to seek death penalty for first degree murder]; *People v. Keenan* (1988) 46 Cal.3d 478, 505 [250 Cal.Rptr. 550, 758 P.2d 1081] [same].) Here, sections 112 and 113 defined identical crimes with different punishments. It was within the prosecutor's discretion to decide how to charge Valladares.

## V. *Prosecutorial Misconduct*

Valladares contends the prosecutor committed misconduct during rebuttal argument when he accused defense counsel of deceiving the jury and when he misstated the law. As we explain below, the prosecutor's rebuttal argument was a fair comment on the evidence, and he did not misstate the law.

■ " 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial. [Citation.] In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review. [Citation.]' [Citation.]" (*People v. Parson* (2008) 44 Cal.4th 332, 359 [79 Cal.Rptr.3d 269, 187 P.3d 1].)

With respect to his first claim, after defense counsel finished his closing argument, the prosecutor began rebuttal by stating, "smoke screen." After the trial court overruled defense counsel's objection and mistrial motion, the prosecutor again said, "smoke screen." The trial court again overruled defense counsel's objection. The prosecutor continued by saying it was "fantastic" defense counsel argued Valladares did not have the specific intent for count 1, but he did have the required intent for the lesser included offense.

In *People v. Cunningham* (2001) 25 Cal.4th 926, 1002–1003 [108 Cal.Rptr.2d 291, 25 P.3d 519], the California Supreme Court concluded the prosecutor's

statement defense counsel's " 'job is to put up smoke, red herrings,' " was not misconduct. After reciting its previous decision where it concluded the prosecutor's comment defense counsel had laid down a " 'heavy, heavy smokescreen' " was a proper argument in response to the defense (*People v. Marquez* (1992) 1 Cal.4th 553, 575 [3 Cal.Rptr.2d 710, 822 P.2d 418]), the court explained the prosecutor's comment was proper because the jury would understand it as an admonition not to be misled by defense counsel's interpretation of the evidence.

Similarly, here, the prosecutor argued the jury should not be misled by defense counsel's argument there was insufficient evidence of specific intent on count 1, but there was sufficient evidence of intent on the lesser included offense. We read the prosecutor's argument as a plea to the jury not to be misled by this apparent inconsistency. The prosecutor's statement was not a personal attack on defense counsel.

As to Valladares's second contention, the prosecutor argued: "I'm going to give you this analogy, because it's the only one I could think of real quickly. Let's say that we make up a new law that says it is illegal to sell hamburgers . . . with the intent that somebody eat them. Okay. And sure enough, some girl working down at the counter at McDonalds sells somebody a hamburger, you know, gives them the hamburger. I charge them with this new ridiculous crime. You sold a hamburger and you specifically intended somebody to eat it. She comes in and she says, no, I didn't intend for anybody to eat it, I just intended to make the five bucks off it. Right. Does that make any sense whatsoever? It's a hamburger. There is only one thing you're going to do with it, you're going to eat it. [¶] It's the same thing with these documents. The only thing you're going to do with them is use them to conceal somebody's citizenship. You can't have it all. Okay. The reality is he sold those documents for one reason and one reason only and that was so that somebody could use those documents to conceal their citizenship. Did he specifically intend that that be done? Absolutely. Because there is no other explanation for it. He certainly didn't do it just to make [$100]. He intended to do both."

The prosecutor did not misstate the law concerning section 113. The prosecutor analogized it to a law that said it was illegal to sell hamburgers with the *intent* that someone eats them. Based on the hamburger analogy, the prosecutor argued that when Valladares sold the documents, he intended to make $100 and to conceal Hauge's true citizenship or resident alien status. Read in its entirety, we conclude the prosecutor's rebuttal argument did not misstate the law or create a conclusive presumption of Valladares's intent. Additionally, contrary to Valladares's assertion, the prosecutor did not express his personal belief of his guilt.

■ Finally, the trial court instructed the jury that nothing counsel says during opening or closing argument is evidence (CALCRIM No. 104, "Evidence") and if anything counsel says conflicts with the trial court's instruction on the law, the jury must follow the court's instruction (CALCRIM No. 200, "Duties of Judge and Jury"). The trial court properly instructed the jury on section 113's elements, and " '[w]e presume that jurors understand and follow the court's instructions' [citation] . . . ." (*People v. Hovarter* (2008) 44 Cal.4th 983, 1005 [81 Cal.Rptr.3d 299, 189 P.3d 300].)

## DISPOSITION

The judgment is affirmed.

Bedsworth, Acting P. J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2009, S174196.