Filed 6/13/14  P. v. Moore CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JOHN MOORE,<br><br>      Defendant and Appellant. | H038754<br>(Santa Clara County<br>Super. Ct. No. C1089656) |

Defendant John Moore was convicted by jury trial of 12 counts of lewd conduct on a child under 14 (Pen. Code, § 288, subd. (a))[1] and one count of possession of matter depicting a minor engaged in sexual conduct (§ 311.11, subd. (a)).  The jury also found true the allegation that the lewd conduct counts had been committed against more than one victim (§ 667.61, subds. (b), (c), (e)).  The court imposed a prison sentence of 180 years to life consecutive to a two-year term.

On appeal, defendant contends that (1) his right to due process was violated because the lewd conduct counts were based solely on generic testimony, (2) the lewd conduct convictions were improper because they were precluded by section 288.5, (3) his right to a fair trial was violated by the use of support persons at trial without a showing of

---

[1]      Subsequent statutory references are to the Penal Code unless otherwise specified.

necessity, (4) the trial court prejudicially erred in admitting propensity evidence under Evidence Code section 1108, and (5) the instruction on the propensity evidence violated his constitutional rights. We find no merit to his contentions and affirm the judgment.

## I. Factual Background

"Jane" and her mother lived with defendant for several years, during which Jane's mother and defendant had three children together.[2] When Jane was six or seven years old, defendant began sexually molesting her. The first molestation occurred in Jane's mother's bedroom in the house in which they were all living in San Jose. Jane's mother was never home when the molestations occurred. The molestations continued to occur at least once a month during the three years they lived in San Jose. On each occasion, defendant put his fingers in Jane's vagina and orally copulated her. The molestations continued at the same frequency when they moved to Tracy and even after defendant and Jane's mother separated and moved to different cities. The molestations stopped when Jane was 12 or 13 years old. Jane did not tell her mother about the molestations at the time because she did not want to hurt her mother or make her mother feel guilty. Jane's first disclosure of the molestations was to a friend when Jane was 18 years old. When Jane was 21 years old, she told her mother about the molestations. Jane never told her cousin "Susan" about the molestations.

Susan, who is a year younger than Jane, spent a lot of time with Jane's family. When Susan was 10 years old and visiting Jane in Tracy, defendant sexually molested Susan in defendant's home office. Susan was sitting on the floor playing a computer game, and defendant was kneeling beside her. Defendant put his hands underneath her clothing and touched her chest and between her legs. He molested her at least 10 times in

---

[2] Throughout this opinion, we will use pseudonyms to protect the privacy of the victims.

his home office.  Defendant also once molested Susan on the floor of the living room of Jane's mother's home in Tracy.  Susan was there for a sleepover with Jane and some of Jane's friends.  Susan awakened to find defendant under her blanket.  He put his hands and mouth on the outside of her vagina.  It was dark and everyone else was asleep.  One time, defendant molested Susan in a bedroom of the Tracy house.  On three other occasions, defendant molested Susan in his bedroom at his house in another town after he had separated from Jane's mother.[3]  Those times, defendant touched her chest and put his mouth on her.  He continued to molest Susan until she was 13 years old.  He told her several times that she would get in trouble if she told anyone about the molestations.  Susan never told anyone about the molestations until a San Jose police detective contacted her in 2012.

In 2010, defendant was living in San Jose and renting out part of his home.  In April 2010, a woman and her two daughters began renting a bedroom and bathroom in defendant's home.  In early May 2010, the power was shut off to the house due to nonpayment of the bill.  That night, the woman and her husband went into the house to collect some things so that she and her daughters could stay elsewhere while the power was out.  Her husband noticed something unusual in the ceiling of the bathroom and shone his flashlight on it.  He saw what appeared to be a camera concealed in a fixture.  The husband pulled the fixture down and discovered that it contained a hidden camera.  He put the fixture back in the ceiling.  A few days later, the woman and her husband returned to the house to pack the rest of her things so she could move out.  Her husband brought equipment so that he could determine what the hidden camera was doing.  He hooked up the equipment to the television in the bedroom and immediately saw an image of the bedroom, indicating that there was also a hidden camera in the bedroom.  The woman immediately contacted the police.

---

[3]     Defendant testified that Susan never came to his home after he left Tracy.

The police obtained a search warrant and searched defendant's home. They found a hidden camera in the vent in the bathroom and another one in the cable box in the bedroom. The police seized a laptop computer and an external hard drive from defendant's desk. On defendant's laptop computer, the police found more than 100 videos from the hidden cameras. These videos included ones of a former tenant's young daughter dressing and undressing in the bedroom and using the bathroom. The hidden camera in the bedroom had also captured video of that young girl's friend having sex with the friend's boyfriend. Another video on defendant's laptop computer showed defendant undressing a friend's two-year-old daughter and displaying the little girl's vagina and anus to the camera. Defendant had taken this video in March 2010 when he was taking care of the little girl for a day. Defendant's laptop computer also contained a trove of child pornography, 88 videos and six images, in a folder called "Zeno" on the laptop's hard drive. Zeno is defendant's middle name. The children in the videos and images were all under 13 years old and as young as one year old. These videos included one in which an adult male committed multiple sex acts on a young girl. The external hard drive found on defendant's desk contained more child pornography, 120 videos and 191 images.

While defendant's home was being searched by the police, defendant arrived home, briefly spoke to a police officer, and then left again. A couple of days after the search, the police obtained a warrant for defendant's arrest, but they could not locate him. A day after the police obtained the warrant, a U-Haul truck pulled up to defendant's home, and several men began loading the contents of the home into the truck. The police discovered that defendant's girlfriend had been in contact with someone at the e-mail address "beonlam@gmail.com." That e-mail address had been created on the day that the arrest warrant issued. The day after the arrest warrant issued, defendant withdrew over $10,000 from his bank account.

The police sought information about defendant's whereabouts from his friends, and this led the police to defendant's former girlfriend, Jane's mother. The police contacted Jane, and she identified Susan as a possible victim of defendant. The police eventually tracked defendant's cell phone calls to Seattle, Washington. In October 2010, defendant was arrested in Seattle.

## II. Procedural Background

The lewd conduct counts pertained to Jane and Susan. The possession count was based on the videos and images that defendant had not created himself, not the videos from the hidden cameras or the video of defendant and the two-year-old. Defendant's niece "Mary" testified that defendant had molested her beginning when she was six years old in 1987. Defendant would come into Mary's room, lie down in her bed, make her touch him, and have sex with her. He would touch her chest under her clothes, put his finger inside of her vagina, and then put his penis in her vagina. These molestations began when Mary was living in Fresno and occurred at least twice a month. There were at least five events in Fresno. The molestations continued at the same frequency when she moved to San Jose. Mary reported the molestations to her mother, but her mother did not believe her. In May 1992, when Mary was 11 years old, in fourth grade, and living in Richmond, she told her teacher that defendant had molested her, and the police were notified.

Defendant testified at trial that he had never molested Jane, Susan, or Mary. He claimed that Jane's mother was "behind this whole thing." Defendant did not deny making the video of the two-year-old, but he claimed that it was part of a longer video that was completely innocent. Defendant testified that none of the child pornography videos or images found on his laptop computer had been placed there by him. He could not explain how those images and videos came to be there. Defendant admitted that he had "porn" on his computer, but he maintained that it was limited to adults. He claimed

5

that he had no knowledge of the existence of the hidden cameras or the hidden camera videos, and his tenant and her husband must have created those to frame him notwithstanding the fact that those videos were made before this tenant moved into defendant's home. Defendant claimed that his May 2010 tenant's husband had somehow known the prior tenants and helped them move in.

The jury returned guilty verdicts on all charged counts and found the multiple victims allegation true. The jury's verdicts expressly found that four of the lewd conduct counts were committed against Jane when she was eight years old and four of them were committed against Jane when she was nine years old. The jury's verdicts also expressly found that defendant had committed lewd conduct on Susan at four different locations.

## III. Discussion

### A. Generic Testimony

Defendant asserts that his due process rights were violated because the lewd conduct counts were supported solely by "generic testimony." He acknowledges that this contention was rejected by the California Supreme Court in *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*). In *Jones*, the California Supreme Court held that generic testimony may form the sole basis for a child molestation prosecution without violating a defendant's due process rights. (*Jones*, at pp. 318, 320-321.) We are bound by *Jones*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, we must reject defendant's contention.

### B. Section 288.5

Defendant claims that the prosecution was precluded from prosecuting him for 12 counts of violating section 288 (lewd conduct on a child under 14) and was instead limited to prosecuting him for two counts of violating section 288.5 (continuous sexual

6

abuse of a child under 14).  He maintains that section 288.5 is a "specific statute" that prevails over section 288, which he identifies as a "general statute."

"'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'" (*In re Williamson* (1954) 43 Cal.2d 651, 654; *In re Shull* (1944) 23 Cal.2d 745, 750.)  This rule has become known as the *Williamson* rule. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 502 (*Jenkins*).)  When the *Williamson* rule applies, the special statute precludes prosecution under the general statute.  (*Jenkins*, at p. 505.)

Defendant contends that the *Williamson* rule applies here, and section 288.5 precludes prosecution under section 288.[4]  "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent."  (*Jenkins*, *supra*, 28 Cal.3d at p. 505.)  "The [*Williamson*] rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict."  (*People v. Walker* (2002) 29 Cal.4th 577, 586.)  Here, the two statutes do not actually "conflict" but are complementary.  The Legislature's intent in enacting section 288.5 was *expressly not to preclude* prosecutions under section 288. Section 288.5 was enacted in 1989 to provide "*additional* statutory protection" for children.  (Stats. 1989, ch. 1402, § 1, italics added.)  Section 288.5 was explicitly intended to operate *in concert with* section 288, which was amended in the same act that enacted section 288.5.  (Stats. 1989, ch. 1402, § 3 [amendment of section 288], § 4

---

[4]      He acknowledges that this contention was rejected by the Fifth District Court of Appeal in *People v. Hord* (1993) 15 Cal.App.4th 711 (*Hord*) and by the Second District Court of Appeal in *People v. Johnson* (1995) 40 Cal.App.4th 24 (*Johnson*).  (*Hord*, at p. 720; *Johnson*, at p. 26.)

7

[enactment of section 288.5].)  This is clear from the text of both the original and current versions of section 288.5.  As originally enacted, section 288.5 provided:  "No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section *or the other offense is charged in the alternative.*"  (Former § 288.5, subd. (c), italics added; Stats. 1989, ch. 1402, § 4.)  This provision remains substantively unchanged in the current version of section 288.5.  (§ 288.5, subd. (c).)  Hence, the Legislature explicitly provided in the text of section 288.5 that section 288.5 did not displace other sex offense charges but provided an *alternative* that could be pursued even in tandem with section 288 charges.

The Legislature's intent could not be clearer.  Because the Legislature expressly stated its intent, the *Williamson* rule, which is simply an aid to determining the Legislature's intent, is inapplicable, and defendant's contention cannot succeed.

### C.  Support Persons

Defendant claims that his confrontation and due process rights were violated when the trial court permitted two prosecution witnesses to testify with support persons without holding a hearing to determine whether support persons were needed.

The prosecution asked the court in limine for permission to use support persons. Defendant did not object or ask that a hearing be held, and the court granted the request. When the woman whose husband had discovered the hidden cameras was called to testify, the prosecutor said:  "Your Honor, [this witness] has an advocate with her as a support person.  Her name is [the support person].  I have advised both the witness and [the support person] that they are not to communicate in any way during the witness's testimony.  They are not to look at each other, touch each other, say anything to each other."  The court told the jury that "the law allows persons in this situation to have a support person for moral support."  Defendant did not object to the presence of the

8

support person, and his cross-examination of this witness was very brief. When Mary was called to testify, the prosecutor stated: "Your Honor, for the record, [Mary] is going to be accompanied by a support person from the YWCA. This is [the support person]. Both [Mary] and [the support person] have been advised that they are not to communicate in any fashion during [Mary]'s testimony." Defendant's trial counsel did not object to the use of a support person and chose not to cross-examine Mary.

Section 868.5 authorizes the use of a support person in a case such as this one. "[A] prosecuting witness in a case involving a violation or attempted violation of Section . . . 288 . . . shall be entitled, for support, to the attendance of up to two persons of his or her own choosing . . . during the testimony of the prosecuting witness. Only one of those support persons may accompany the witness to the witness stand . . . ." (Former § 868.5, subd. (a).) Although the statute does not explicitly require that a showing of necessity be made, this court held in *People v. Adams* (1993) 19 Cal.App.4th 412 (*Adams*) that such a showing is required. (*Adams*, at p. 444.) In *Adams*, the defense had objected to the use of a support person, and the court had overruled the objection without any showing or finding of necessity. (*Adams*, at p. 434.) This court held that the absence of a showing was harmless beyond a reasonable doubt. (*Adams*, at p. 444.) In *People v. Lord* (1994) 30 Cal.App.4th 1718 (*Lord*), the First District Court of Appeal held that the issue of the propriety of the use of a support person without a hearing was not preserved for appeal because the defense had not objected to the use of a support person or sought a hearing at trial. (*Lord*, at p. 1722.)

Defendant claims that no objection was necessary in the trial court because he is challenging the *constitutionality* of section 868.5. Not so. While defendant attempts to characterize his claim as one that section 868.5 is unconstitutional because *the statute* does not explicitly require a showing of necessity in all cases, *Adams*, which was binding on the trial court, held nearly 20 years prior to defendant's trial that a showing of necessity was required. Thus, defendant's claim is not that the statute is unconstitutional

9

but that the trial court did not comply with the statute as construed in *Adams*. Defendant's reliance on *Lord* is inapt as he is making precisely the same challenge that the *Lord* court found to be forfeited.  (See *Lord*, *supra*, 30 Cal.App.4th at p. 1722, fn. 2.) The wording of his claim does not change its nature.  The contention that defendant is making in this appeal is not that the constitution prohibits all use of support persons but that the trial court did not require that a showing of necessity be made.  An objection to the lack of a showing of necessity would have triggered the prosecution to attempt to make the necessary showing.  A successful showing would have justified the use of support persons under section 868.5 and would not have been vulnerable to the challenge that defendant is making on appeal.  Had the prosecution failed to make the necessary showing, the trial court would have precluded the use of support persons.  Since the alleged error could have been prevented by a timely objection, defendant's failure to object forfeited this contention.

### D.  Admission of Propensity Evidence Under Evidence Code Section 1108

Defendant challenges the constitutionality of Evidence Code section 1108.  He objected in limine on foundational and credibility grounds to the admission of Mary's testimony under Evidence Code section 1108.  The court overruled defendant's objection. Defendant also objected to the admission of evidence about the hidden camera videos and the video of the two-year-old on the grounds that these videos did not qualify for admission under Evidence Code sections 1101, subdivision (b) or 1108.  He also sought the exclusion of these videos on Evidence Code section 352 grounds.  The court overruled his objections.

Defendant does not renew those objections on appeal.  His sole contention on appeal is that Evidence Code section 1108 violates his right to due process under the United States Constitution.  Defendant acknowledges that the California Supreme Court rejected this contention in *People v. Falsetta* (1999) 21 Cal.4th 903.  We are bound by

*Falsetta*, so we must reject defendant's contention. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)

### E. Instruction on Propensity Evidence

Defendant also challenges the propriety of the trial court's instruction to the jury regarding the propensity evidence.

The jury was instructed that the lewd acts on Mary, the hidden camera videos, and the video of the two-year-old were uncharged. The instructions told the jury that it "may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged crimes." "If you decide the defendant committed the uncharged offenses you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit possession of child pornography and/or child molestation as charged here in Counts 1 through 13. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of the charged crimes in counts 1 through 13. The People must still prove each charge and allegation beyond a reasonable doubt." Defendant did not object to these instructions or ask that they be modified.

Defendant argues that this instruction was unconstitutional because it permitted the jury to infer guilt from disposition and lowered the prosecution's burden of proof by permitting the jury to utilize the uncharged acts based on finding them true by a preponderance of the evidence. Defendant acknowledges that the California Supreme Court upheld the validity of a prior version of this instruction in *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*). The *Reliford* court held that the instruction properly told the jury that it could infer guilt from disposition because this was a "legitimate inference."

11

(*Reliford*, at p. 1013.)  The court also held that the instruction properly told the jury to apply a preponderance of the evidence standard to the uncharged acts and would not have misled the jury to believe that this standard displaced the beyond-a-reasonable-doubt standard that applied to the charged offenses.  (*Reliford*, at p. 1016.)  There is no material difference between the instruction in *Reliford* and the one given here.  (*People v. Cromp* (2007) 153 Cal.App.4th 476, 480.)  We are bound by *Reliford*, and we therefore reject defendant's challenges to this instruction.  (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)

## IV.  Disposition

The judgment is affirmed.

_____

Mihara, J.

WE CONCUR:

_____

Elia, Acting P. J.

_____

Grover, J.

People v. Moore
H038754

13